**HARTFORD FIRE INSURANCE CO.**
**and New York Underwriters**
**Insurance Co., Appellants,**

v.

**RAINBOW DRILLING COMPANY,**
**INC., Appellee.**

No. A14–86–00748–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

March 10, 1988.

Rehearing Denied April 20, 1988.

David H. Brown, B. Lee Ware, Marie R. Yeates, Jim C. Ezer, Houston, for appellants.

Joseph V. Crawford, K. Blake Coffee, Austin, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

This appeal is from a final judgment in a declaratory judgment action. The trial court held that appellee, Rainbow Drilling Company, Inc., was an "insured" under a certain Hartford insurance policy issued by appellants to Union City Transfer, Inc. and that appellants therefore had a duty to defend a certain personal injury action brought against appellee. While appellants assign nine points of error, the controlling issue is whether appellee, which was not a named insured under the policy in question, is nevertheless covered solely because it was "using" the automobile. We reverse.

Rainbow Drilling Company, Inc. (Rainbow) was the owner of an oil well drilling rig. A well had been just completed near Mont Belvieu and the rig was being moved to a new site in Burleson County near Lyons. Rainbow had contracted with Union City Transfer, Inc. (Union City) to move the rig. At the new site Randy Moore (Moore) an employee of Union City, was injured. Moore subsequently filed suit against Rainbow and Rainbow made demand upon appellants to provide a defense and coverage in the Moore suit. Appellants denied coverage and Rainbow then proceeded with the declaratory judgment action to compel appellants to provide a defense.

The applicable sections of the insurance policy issued by appellants to Union City provided the following as to "coverage" and "persons insured":

*Coverage*

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because ... of bodily injury ... to which this insurance applies, caused by an occurrence and arising out of the ... use, including loading and unloading, of any automobile, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury ... even if the allegations of the suit are groundless, false or fraudulent....

*Persons Insured*

Each of the following is an insured under this insurance to the extent set forth below:

(a) the named insured;

.     .     .     .     .

(c) any other person while using an owned automobile ... with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury ... arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

(1) a lessee or borrower of the automobile, or

.     .     .     .     .

The trial court made the following applicable findings of fact:

2. On or about August 10, 1981, Rainbow Drilling Company, Inc. was the owner of a certain oil well drilling Rig No. 4.

3. On or about August 10, 1981, Union City Transfer, Inc. was employed by a third party to move Rig No. 4 from one

location to a location in Burleson County, Texas.

4. On or about August 11, 1981, in addition to other trucks, equipment, and employees, Union City Transfer, Inc. directed a twelve-ton gin pole truck, Model DC93643, VIN No. 79266 to facilitate the move and transfer of Rig No. 4.

　·　　·　　·　　·　　·

6. On or about August 11, 1981, Randy L. Moore was an employee of Union City Transfer, Inc. and was acting as a swamper for Carl Speck, the driver of the gin pole truck in question and also an employee of Union City Transfer, Inc.

　·　　·　　·　　·　　·

12. Rainbow Drilling Company, Inc. and its agents and representatives are not "named insureds" in Policy No. 61PNC 164546 as defined by said policy.

　·　　·　　·　　·　　·

14. The pleadings of the Plaintiff in the case of *Randy Moore v. Rainbow Drilling Company, Inc.*, Cause No. 18,183, allege that an employee of Rainbow Drilling Company acting within the course and scope of his employment by Rainbow, was directing a Union City Transfer, Inc. vehicle which was Union City's twelve-ton gin pole truck, Model DC 93643, at the time of Randy Moore's accident, and that such "directing" was the cause of Randy Moore's injuries and damages. Such "directing" constituted a "using" of the vehicle sufficient to invoke the provisions of the insurance policy in question.

15. That such "using" did not constitute the "loading or unloading" of the subject truck.

16. Rainbow Drilling Company, Inc., pursuant to the terms and definitions of New York Underwriters Insurance Company Policy No. 61 PNC 164546, and by virtue of the allegations contained in the pleadings of the Plaintiff Randy Moore in Cause No. 18,183, qualifies as an "insured" under such policy of insurance.

In their first two points of error appellants contend, respectively, that there is no evidence to support the trial court's finding that Rainbow was "using" the vehicle in question so as to make Rainbow an "insured" under the policy or that any use of the vehicle by Rainbow did not constitute "loading or unloading." Alternatively, in the second point appellants contend the evidence conclusively established that appellee's use of the vehicle constituted "loading and unloading." In their third point appellants contend the evidence established as a matter of law that Rainbow was not the borrower or lessee of the vehicle in question "and thus, was not an 'insured' with respect to any 'use' of the vehicle involving 'loading or unloading.'"

It is firmly established that "in determining the duty of an insurance company to defend a lawsuit, the allegations of the petition should be considered in the light of the policy provisions without reference to the truth or falsity of such allegations and without reference to what the parties know or believe the true facts to be, or without reference to the legal determination thereof." *Heyden Newport Chemical Corp. v. Southern General Insurance Co.*, 387 S.W.2d 22, 24 (Tex.1965).

The only evidence before the trial court was the insurance policy and plaintiff's petition in the Moore–Rainbow lawsuit. In that lawsuit, plaintiff's petition alleged:

### II.

That on August 11, 1981, Plaintiff was an employee of UNION CITY TRANSFER, INC. (hereinafter called UNION CITY) of Beaumont, Texas. That Defendant RAINBOW was the owner of a certain oil well drilling rig called Rig # 4, and UNION CITY contracted to move said rig from a drill site near Mont Belvieu, Texas, to a drill site approximately 7 miles west of the City of Lyons, Burleson County, Texas, by use of various trucks and employees of UNION CITY.

That on such date, Defendant RAINBOW'S employees were engaged in assembling the substructure of such rig over the site for the oil well to be drilled in Burleson County, Texas; and, in an attempt to properly align the substructure in the process of its assembly, De-

fendant RAINBOW'S employee directed a UNION CITY employee operating a UNION CITY gin pole truck to lift the rig substructure with the gin pole truck winch cable.

That the rig substructure was too heavy a load for the gin pole truck to lift and the truck was placed under such a strain that its front wheels lifted completely off of the ground as its winch tugged upon the rig substructure.

That notwithstanding the obvious dangerous strain and punishment that UNION CITY's gin pole truck was being subjected to, Defendant RAINBOW'S said employee continued to direct UNION CITY'S gin pole truck driver to pull with the winch in a vain attempt to move the substructure into proper position.

That as the gin pole truck continued in its fruitless efforts to lift the substructure and with its front wheels lifted up off of the ground, the cable used to hold the truck's gin poles in position broke under the strain; whereupon, the gin poles fell and struck Plaintiff in the neck thus causing him the devastating injuries hereinafter described.

The above allegations of the petition plainly allege: (1) that Rainbow and Union City contracted for Union City to move Rainbow's oil well drilling rig from one drill site to another by using Union City's trucks; (2) that Rainbow was assembling the substructure of the drilling rig over the new site; (3) that while so doing and in attempting to properly align the substructure of the drilling rig into proper position, Rainbow directed a Union City's employee operating a gin pole truck to lift the rig substructure with the gin pole truck winch cable, and (4) that in so doing a cable on the winch truck broke, causing injuries to Moore, a swamper for the gin pole truck and an employee of Union City.

■ Appellee argues that the only reasonable interpretation of the Moore petition is that it alleges a use of the vehicle other than loading or unloading. Appellee states that the policy "does not provide an exclusion for the general loading and unloading operations." Appellee points to that portion of the policy which provides "with respect to bodily injury ... arising out of the loading or unloading thereof," and concludes that the "use of the word 'thereof' necessarily limits this proviso to the loading or unloading of the *actual vehicle being used*" (emphasis supplied). While appellee does not so state, we interpret appellee's argument to be that since the gin pole truck was not actually used to *transport* the rig substructure from Mont Belvieu to Lyons, the gin pole truck was not subject to the loading and unloading exclusion. We find no merit to this argument. Moore's petition alleged the gin pole winch truck to be a covered vehicle. Certainly, the gin pole truck was being loaded and unloaded with each piece of the rig structure that it lifted and then set in place for reassembly.

In 1964 the supreme court adopted, for Texas, the majority view that "loading and unloading" embraces not only the immediate transference of the goods to or from the vehicle, but the *"complete operation"* of transporting the goods between the vehicle and the place from or to which they are being delivered. *Travelers Insurance Co. v. Employers Casualty Co.*, 380 S.W.2d 610 (Tex.1964). The court was there faced with the standard "loading and unloading" clause. Prior to the addition of that endorsement to the automobile liability policy, neither the automobile policy nor the standard liability policy clearly defined which insurer had liability coverage for injuries sustained upon premises of one who was insured under a general liability policy during the loading and unloading of a vehicle not owned or hired by the general liability insured and an insured under a standard automobile liability policy. *See Commercial Standard Insurance Co. v. American General Insurance Co.*, 455 S.W.2d 714 (Tex.1970). The question was settled by the addition of the loading and unloading clause. *Commercial Standard Insurance Co.*, 455 S.W.2d at 717.

In discussing the unloading in *Travelers* the court used the following language:

[T]he rule can not be stated in general terms that will explain all of its applica-

tions. Where an additional insured is involved, "delivery" as used by the courts refers not to the legal transfer of title, control, or risk of loss *but to the physical placing of the articles at the point where the loading process may, under the facts of the particular case, be regarded as complete.* The issue here is not who owned or controlled the concrete but whether Borders was unloading the truck, and thereby using it, while the bucket full of concrete was being moved from the truck to the contractor's forms (emphasis added).

*Travelers*, 380 S.W.2d at 614.

The court pointed out that ready-mix concrete, unlike steel or brick, cannot be stored at the construction site indefinitely, and the unloading process was not complete until the concrete was placed in the contractor's forms. The same analogy applies here. An oil well drilling rig is a massive piece of machinery which, to be moved, must be disassembled and loaded onto trucks for transport to the new site. Once it arrives at the new site it must be unloaded from the transport trucks and reassembled at the exact location where the new well is to be drilled. It would defy logic to hold that the transport company's "unloading" process was complete when the drilling rig substructure and other components, which had yet to be reassembled, were first unloaded from the transport trucks. In fact, Moore's petition plainly alleges that "Rainbow's employees were engaged in assembling the substructure of such rig over the site for the well to be drilled ...; and, in an attempt to properly align the substructure in the process of its assembly" a Rainbow employee directed a Union City employee to lift the rig substructure with the winch truck. Just as the court held in *Travelers* that "unloading" of ready mix concrete was not complete until the concrete was deposited in the contractor's forms, we hold that the "unloading" of an oil well drilling rig, at the site for the drilling of a new well, is not complete until the gin pole trucks have completed the lifting and placing the components of the drilling rig in proper position so the parts can be reassembled. It

therefore follows that at the time of the accident resulting in Moore's injuries, Rainbow was "using" the insured vehicle in the unloading of the drilling rig.

As quoted above, the insurance policy provided coverage for "any other person" while using the automobile, but excluded coverage for bodily injuries arising out of the loading or unloading unless such other person is "a lessee or borrower of the automobile." Appellee argues that if we determine that the Moore petition alleges "that Rainbow was loading or unloading the vehicle" then "Moore's Petition must reasonably be interpreted as alleging that Rainbow was, indeed, a borrower of the truck." We do not agree and find the case of *Liberty Mutual Insurance Co. v. American Employers Insurance Co.*, 556 S.W. 2d 242 (Tex.1977), to be dispositive. The insurance policy provision in that case, identical to the one before us, provided an exclusion for persons who were unloaders but not borrowers of the vehicle. The court stated that "general rules of construction lead us to conclude that ... such provision was intended to limit the insurer's liability for injuries resulting from acts of these nonemployees of the owner of the vehicle." The issue before the court was whether Liberty Mutual, which had issued the policy, had a duty to defend. The trial court found that the death resulted while the truck was being "unloaded" but that Homette Corporation (the "other person" there who was in the same position as Rainbow in this case) had "borrowed" the truck for the purpose of unloading it.

The supreme court approved the court of civil appeals definition of "borrower" as "someone who has, with permission of the owner, temporary possession and use of the property of another for his own purposes." The court, however, reversed, holding that Liberty Mutual had no duty to defend. The court stated:

> While unloading is a "use" of the vehicle, the conjunction "and" in the definition of "borrower" indicates that one must also have possession of the vehicle to be a "borrower". Possession connotes the right to exercise dominion and control

over the truck and trailer. There is no evidence that Homette had this right.

. . . . .

We hold that merely proving one had the right to remove goods from a truck is not evidence one was a "borrower" of the truck. There must be evidence of possession. The record in this case discloses no such evidence. *Liberty Mutual*, 556 S.W.2d 242 at 245.

■ Appellants correctly contend that there is a total absence of an allegation in Moore's petition that Rainbow was either a lessee or a borrower of the truck. Nor can the petition be said to imply that Rainbow was a borrower by its description of the employee's activity in directing the truck. Although our finding that the truck was being loaded or unloaded constitutes a "use" of the vehicle, meeting the first prong of the definition of "borrower," there is neither allegation nor evidence that Rainbow was *in possession* of the truck. Since no evidence was offered by Rainbow other than the Moore petition, we find that there is no evidence in this record to support the conclusion that Rainbow was a borrower or lessee of the vehicle in question. We therefore hold that Rainbow was not an insured with respect to any use of the vehicle involving loading or unloading. Appellants' first three points of error are sustained.

■ In their ninth point of error appellants contend the trial court abused its discretion in awarding attorney's fees to appellees for the trial and appeal of the declaratory judgment action. We agree and adhere to our previous holding that where a trial court denies declaratory relief, or, as here, a trial court improperly renders a declaratory judgment, it is an abuse of discretion to award attorney's fees to a party that is not entitled to any relief. *City of Houston v. Harris County Outdoor Advertising Ass'n*, 732 S.W.2d 42 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Appellants' ninth point is sustained.

The judgment of the trial court is reversed and judgment is rendered that Hartford Fire Insurance Co. and New York Underwriters Insurance Company are not obligated to defend the suit.

J. CURTISS BROWN, Justice, dissenting.

Hartford Fire Insurance Co. [Hartford] appeals from a bench trial. Rainbow Drilling Company, Inc. [Rainbow] is the appellee. Union City Transfer Company [Union City] is the named insured. Rainbow sought a declaratory judgment that Hartford's automobile liability policy obligated it to defend and cover any loss established against Rainbow as an "insured" under the policy. After a bench trial on the merits the court rendered judgment declaring a duty to defend. The court below did not pass on the ultimate question of loss because a decision on loss would be advisory.

As trier of fact, the judge made findings of fact and conclusions of law fully supporting his judgment. The appellant attacks the legal and factual sufficiency of these findings of fact. The policy excludes obligations for which the insurer is liable under workers compensation law. The appellant contends this exclusion applies. These attacks are wholly without merit. The judgment of the trial court, sitting without a jury, should surely be affirmed.

The trial court's findings of fact and conclusions of law clearly indicate that the court properly applied the law to the facts. Findings of fact number fourteen and number sixteen state:

14. The pleadings of the Plaintiff in the case of Moore v. Rainbow Drilling Co., Inc., Cause No. 18,183, allege that an employee of Rainbow Drilling Co. acting within the course and scope of his employment by Rainbow, was directing a Union City Transfer, Inc. employee who was operating a Union City Transfer, Inc. vehicle which was Union City's twelve ton gin pole truck model DC 93643, at the time of Randy Moore's accident, and that such "directing" was the cause of Randy Moore's injuries and damages. Such "directing" constituted a "using" of the vehicle sufficient to in-

voke the provisions of the insurance policy in question.

. . . .

16. Rainbow Drilling Company, Inc., pursuant to the terms and definitions of New York Underwriter's Insurance Company Policy No. 61 PNC 164546, and by virtue of the allegations contained in the pleadings of the plaintiff, Randy Moore in cause no. 18,183, qualifies as an "insured" under such policy of insurance. Conclusion of law number four states "[t]hat it is the sole obligation of New York Underwriters Insurance Company to provide the defense for Rainbow Drilling Company in the Randy Moore law suit, cause no. 18,183 by governing legal principles."

In this area of law the following propositions seem to be established:

(1) In Texas the duty to defend is determined solely from *the face of the pleadings* and without reference to facts outside the pleadings. In determining the duty of the liability insurance company to defend a lawsuit brought against the insured, Texas courts should consider allegations of the complaint in light of the policy provisions without reference to truth or falsity, the parties' knowledge or beliefs, or a legal determination of actual facts. *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973); *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 24 (Tex.1955).

(2) The insurer is obligated to defend if there is *potentially* a case under the complaint within the coverage of the policy. *Heyden,* 387 S.W.2d at 26 (quoting 50 L.2d 458, 504).

(3) In applying the "pleadings only" rule the court should indulge the most liberal interpretation of the allegations of which they are susceptible and doubts as to the import of the allegation should be resolved *in favor of the insured. See Heyden,* 387 S.W. 2d at 26; *Mary Kay Cosmetics, Inc. v. North River Ins. Co.,* 739 S.W.2d 608, 612 (Tex.App.—Dallas 1987); *Norvell Wilder Supply Co. v. Employers Cas. Co.,* 640 S.W.2d 338, 340 (Tex.App.—Beaumont 1982, writ dism'd).

(4) If the petition alleges at least *one* cause of action within the policy coverage the insurer must defend. *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983).

(5) Courts must generally construe insurance contracts strictly against the insurer and in favor of the insured. *Ramsay v. Maryland Am. Gen. Ins. Co.,* 533 S.W.2d 344, 349 (Tex.1976); *United Am. Ins. Co. v. Selby,* 161 Tex. 162, 338 S.W.2d 160, 164 (1960). Where two or more constructions are possible, one of which would provide coverage and one which would not, the construction which provides coverage is favored. *Blaylock v. American Guar. Bank Liab. Ins. Co.,* 632 S.W.2d 719, 721 (Tex.1982). The objective of an insurance policy is to insure; courts should not construe the policy otherwise unless the language clearly requires it. *Goswick v. Employers' Cas. Co.,* 440 S.W.2d 287, 289 (Tex.1969). If the petition does not state facts sufficient to clearly indicate or negate coverage, the insurer must defend if there is *potentially* a case under the complaint within the coverage of the policy. *Fort Worth Lloyds v. Garza,* 527 S.W.2d 195, 199 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *St. Paul Ins. Co. v. Rahn,* 641 S.W.2d 276, 279 (Tex.App.—Corpus Christi 1982, no writ).

Hartford concedes the plaintiff's allegations "generally" determine the duty to defend. The majority opinion recites entirely irrelevant outside "facts" unsupported by any evidence introduced at trial. Sound insurance law demands we decide the duty to defend solely on the basis of the petition and the insurance policy. Deferring the duty to defend until a court determines the truth or falsity of the allegations would significantly damage both insureds and insurers.

The allegations at issue here are:

That on August 11, 1981, Plaintiff was an employee of UNION CITY TRANSFER, INC. (hereafter called UNION CITY) of Beaumont, Texas. That defendant RAINBOW was the owner of a certain oil well drilling rig # 4, and UNION CITY contracted to move said rig from a drill site near Mont Belvieu, Texas, to a drill site approximately 7 miles west of the City of Lyons, Burleson County, Texas, by use of various trucks and employees of UNION CITY.

That on such date, Defendant RAINBOW'S employees were *engaged in assembling the substructure of such rig over the site for the oil well* to be drilled in Burleson County, Texas; and in an *attempt to properly align* the substructure in the process of *its assembly,* Defendant RAINBOW'S employee directed a UNION CITY employee operating a UNION CITY *gin pole truck* to lift the rig substructure with the gin pole truck winch cable.

That the rig substructure was too heavy a load for the gin pole truck to lift and the truck was placed under such a strain that its front wheels lifted completely off the ground as its winch tugged upon the rig substructure.

That notwithstanding the obvious dangerous strain and punishment that UNION CITY gin pole truck was being subjected to, Defendant RAINBOW'S said employee continued to direct UNION CITY'S gin pole truck driver to pull with the winch in a vain attempt to move the substructure into proper position.

That as the gin pole continued in its fruitless efforts to lift the substructure and with its front wheels lifted off of the ground, the cable used to hold the truck's gin poles in position broke under the strain; whereupon, the gin poles fell and struck Plaintiff in the neck thus causing him the devastating injuries hereinafter described.[1]

The applicable policy provision states "persons insured" includes the named insured (Union City) and:

any other person while using an *owned automobile* or a *hired automobile* with the permission of the *named insured,* providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to *bodily injury* or *property damage* arising out of the loading or unloading thereof, such other person shall be an *insured* only if he is:

(1) a lessee or borrower of the *automobile,* or

(2) an employee of the *named insured* or of such lessee or borrower....[2]

Norman Bookout, a duly qualified expert, testified on behalf of the appellee. Bookout quoted language from the policy that:

[t]he company [appellee] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damages to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, and including loading and unloading, of any automobile, and the company shall have the right and *duty* to defend any suit against the insured seeking damage on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limits of the companies liability has been exhausted by payment of judgments or settlements.

He then testified that the term "persons insured" includes (c), "any other person while using an owned automobile or a hired automobile with the permission of the named insured, providing his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission." The following also appears: "but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person

---

**1.** Emphasis added.

**2.** Emphasis in original.

shall be insured only if he is a lessee or a borrower of the automobile or an employee of the named insured or of such lessee or borrower." With reference to the Randy Moore lawsuit Bookout testified the loading and unloading provision does not apply to deny coverage. Bookout explained that the word "thereof," properly construed, meant the exception applied to deny coverage for accidents in unloading the particular automobile (the gin pole truck) and not accidents in the general operation of the automobile. Under the allegations of the petition in the Randy Moore lawsuit, the truck involved was not being loaded or unloaded. It was being used to align a substructure.

No allegation in the Moore petition states the gin pole truck (the insured vehicle) had ever been loaded with anything. Any inference would be to the contrary since such a vehicle would be for "work" rather than "transport." While not necessary to an affirmance of this case, the allegations of Moore's petition are consistent with Rainbow being a "lessee" or "borrower." Clearly, the workers compensation exclusion is an affirmative defense not plead or involved in the "duty to defend" question presented.

In light of the policy provisions, the allegations of the Moore petition, and the findings of fact and conclusions of law, the judgment of the trial court was right and should be affirmed.