**HOME STATE COUNTY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**ACCEPTANCE INSURANCE COMPANY, Appellee.**

No. 07–97–0084–CV.

Court of Appeals of Texas,
Amarillo.

Nov. 13, 1997.

Jones Flygare Brown & Wharton PC (Jeffrey B. Jones and John D. Rosentreter), Lubbock, for appellant.

Underwood Wilson Berry Stein & Johnson PC, (Patrick B. Mosley), Amarillo, for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

REAVIS, Justice.

By six points of error, appellant Home State County Mutual Insurance Company (Home State) appeals from a summary judgment rendered upon the motion of Acceptance Insurance Company (Acceptance) in an action for declaratory judgment presenting coverage questions under two insurance policies issued to J.P. Esquivel Trucking, Inc. (Esquivel), the insured. The coverage questions arose when Aubrey Prichard collided with road base material delivered to a construction site by Esquivel. Based on the rationale expressed, we reverse and render.

Esquivel was engaged to deliver rock and sand, called "base," for a road construction project in Hall County. Home State issued a commercial auto liability policy and Acceptance issued a commercial general liability policy to Esquivel. Both policies were in effect at the time of the underlying accident. Jordan Paving Company, another subcontractor, had the responsibility to level and spread the base after it was delivered to the job site by Esquivel.

Early in the morning of July 28, 1994, a driver for Esquivel dumped a truckload of base at the job site. After that load was delivered, the Esquivel driver left the site to pick up another load of base. Before the Esquivel truck returned, Aubrey Prichard, an employee of Jordan Paving, collided with the load of base which had previously been unloaded at the site. At the time of the accident, no Esquivel trucks, equipment or employees or any other persons were at the scene of the accident.

Prichard sued Esquivel for injuries he sustained in the collision. Esquivel filed a third party action against Acceptance under the Declaratory Judgments Act, Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001 et. seq., (Vernon 1997), seeking a declaration that the general liability policy issued by Acceptance afforded coverage. Acceptance also sought a declaratory judgment contending that the auto liability policy issued by Home State provided coverage. Both Home State and Esquivel contended that the general liability policy issued by Acceptance afforded coverage.

Prichard's lawsuit was dismissed pursuant to a settlement agreement dated October 1, 1996, whereby Home State paid $15,000.00, and Acceptance paid $25,000.00, to Prichard. The settlement agreement also provided that both Home State and Acceptance would submit motions for summary judgment to determine the coverage question and that the company found to have coverage would reimburse the other for the amount contributed to the settlement. Home State's motion for summary judgment stated that its commercial auto liability policy did not afford coverage because (1) Prichard's injuries did not

result from the ownership, maintenance or use of a covered auto; (2) the policy excluded coverage for bodily injury or property damage resulting from the handling of property after it has been moved from the covered auto to the place where it is finally delivered by the insured; and (3) the policy excluded coverage for bodily injury or property damage arising out of the insured's work after that work had been completed or abandoned.[1]

Acceptance also filed a motion for summary judgment on the ground that no genuine issues of material fact existed regarding coverage and that as a matter of law its general liability insurance policy afforded no coverage to Esquivel for Prichard's injuries because the unloading of the base had not been completed.[2] The trial court granted the summary judgment motion filed by Acceptance and ordered that Acceptance recover $25,000.00 from Home State and that Home State take nothing against Acceptance in accordance with the settlement agreement.

## Standard of Review

■ For a party to prevail on a motion for summary judgment he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). When both parties move for summary judgment, each party "bears the burden of establishing that it is entitled to judgment as a matter of law." *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993). If the trial court grants one summary judgment and denies the other, the appellate court may render the judgment the trial court should have rendered. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

## Home State Auto Liability Policy

The ultimate question for decision is whether the Home State policy or the Acceptance policy afforded coverage for Prichard's injuries. By points of error one, three, and five, Home State contends the trial court erred in granting summary judgment for Acceptance and in rendering judgment that Acceptance recover $25,000.00 from Home State because as a matter of law the Home State policy did not extend coverage for Prichard's injuries. We agree.

Home State argues that its policy provided coverage for accidents resulting from the "ownership, maintenance or use of a covered auto." Because Prichard collided with a truckload of base, which had been completely unloaded, Home State asserts that the accident did not result from the ownership, maintenance or use of a covered auto.

The proper application to be given a "loading and unloading" clause contained in the "use" provision of a standard automobile liability policy was first decided in Tex-

1. The coverage provision of Home State's auto liability policy provides in part:

   **A. COVERAGE**
   We will pay all sums an **insured** legally must pay as damages because of **bodily injury** or **property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto**.
   Two exclusion provisions contained in the policy provide in part:
   **B. EXCLUSIONS**
   This insurance does not apply to any of the following:
   **7. HANDLING OF PROPERTY**
   **Bodily injury** or **property damage** resulting from the handling of property:
   b. After it is moved from the covered **auto** to the place where it is finally delivered by **insured**.
   **10. COMPLETED OPERATIONS**
   **Bodily injury** or **property damage** arising out of your work after that work has been completed or abandoned.

2. The coverage provision of the Acceptance general liability policy provides in part:

   The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of
   A. **bodily injury** or
   B. **property damage**
   to which this insurance applies....
   The exclusion provision relied on by Acceptance to deny coverage provides in part:
   This insurance does not apply to:
   (b) to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, loading or unloading of
   (1) any **automobile** or aircraft owned or operated by or rented or loaned to any **insured**, or
   (2) any other **automobile** or aircraft operated by any person in the course of his employment by any **insured**....

as in *American Employers' Ins. Co. v. Brock*, 215 S.W.2d 370 (Tex.Civ.App.—Dallas 1948, writ ref'd n.r.e.). Relying on decisions from other jurisdictions, the court alluded to the two rules applied in construing the clause which are the "coming to rest" rule and the "complete operation" rule. A more detailed explanation of these two rules was later discussed in *Travelers Insurance Co. v. Employers Casualty Co.*, 380 S.W.2d 610, 612 (Tex.1964). Under the "coming to rest" rule, which is the minority view, loading begins when the transported object has been brought into the immediate vicinity of and is being physically carried or lifted into the vehicle, and unloading ends when the cargo reaches a place of rest, and is no longer being carried or lifted off the vehicle. *Id.*

The majority view, which was adopted in *Travelers,* embraces the "complete operation" rule which holds that loading and unloading not only includes the immediate transport of goods to or from the vehicle, but the complete operation of transporting the cargo between the vehicle and the place to or from which the cargo is being delivered. *Travelers,* 380 S.W.2d at 612. The majority view equates unloading with delivery. When transportation is contemplated, one expects the goods to be picked up from their present location and moved to a new location. When delivery is contemplated, one expects the goods to be placed at a location desired by the recipient. Unloading is not complete until the goods reach the final destination contemplated when the transportation began. Thomas L. Healey, *Automobile Insurance— Texas Supreme Court Adopts Complete–Operation Definition of Unloading,* 43 Texas L.Rev. 102 (1964).

In *Travelers,* the Court determined at what stage ready-mix concrete was unloaded from a truck. The inquiry was whether the unloading operation was complete when the concrete was transferred to a contractor's bucket to be poured in the forms by use of a crane, or when it was actually placed in the forms. The Court concluded that pre-mixed concrete delivered to a job site *via* trucks, unlike steel, brick, lumber or other building materials, cannot be stored at a job site

indefinitely. Therefore, the ready-mix concrete was not completely unloaded until it was placed in the forms. Thus, a contractor's bucket and crane, being incidental to the unloading operation, were only conduits by which the concrete was delivered to its final destination, the forms. *Travelers,* 380 S.W.2d at 612–13. The Court also noted that the "complete operation" rule cannot be stated in general terms which will explain all of its applications. *Id.* at 614.

The Supreme Court was again presented a similar question in *Commercial Standard Ins. Co. v. American Gen. Ins. Co.*, 455 S.W.2d 714 (Tex.1970). In *Commercial Standard,* an accident occurred after some, but not all, of the truckload of cement had been transferred from the truck into a bucket and then into forms. The Court followed its decision in *Travelers* and held that the pertinent inquiry was not whether the contract had been completed, but whether the unloading operation under the terms of the policy had been completed. The Court concluded that at the time of the accident the "unloading" of the concrete had not been completed.

Under the "complete operation" rule adopted in *Travelers,* unloading is complete when the goods being transported reach their final destination. *Travelers* at 612. The base that Esquivel delivered and dumped the morning of Prichard's collision, unlike ready-mix concrete, but similar to steel, brick and lumber, reached its final destination when it was completely unloaded at the road construction site. At this stage of the project, Jordan Paving was responsible for leveling and smoothing out the base. Therefore, the Home State policy did not provide coverage for Prichard's injuries because the base had been completely unloaded and delivered to its final destination.

Moreover, Home State argues alternatively, that there is no coverage under its policy for Prichard's injuries because of exclusion seven (7) or ten (10). We agree that exclusion seven (7) applies to exclude coverage.

The purpose of an exclusion in an insurance policy is to remove or exclude something from coverage that would other-

wise have been covered. *Liberty Mut. Ins. Co. v. Am. Emp. Ins. Co.*, 556 S.W.2d 242, 245 (Tex.1977). Under exclusion seven (7), there is no coverage for damages resulting from the handling of property after it is moved from the covered auto to the place where it is finally delivered. This exclusion applies because at the time of the accident the truckload of base had been finally delivered. Because we hold that exclusion seven (7) applies, it is not necessary to consider the application of exclusion ten (10). Therefore, the Home State policy exclusion prevails over the coverage provision for events arising from the "ownership, maintenance or use of a covered auto." Under the exclusion, coverage ceased once the unloading operation was completed. We sustain points of error one, three, and five.

### Acceptance General Liability Policy

By points of error two, four, and six, Home State contends the trial court erred in granting summary judgment for Acceptance and in rendering judgment that Home State take nothing from Acceptance because the Acceptance policy afforded coverage. Home State requests that we render judgment in its favor and against Acceptance for $15,000.00, plus attorney's fees in the amount of $7,667.58, pursuant to the terms of the settlement agreement. We agree with their contentions and grant their request.

Acceptance contends that Esquivel had not completely unloaded the base because the truckload of base unloaded on the morning of the collision was "just part of many loads that were to be taken to the work site." Acceptance relies on several cases to support its contention that the Home State policy provides coverage for Prichard's damages. The first of these is *American Employers' Ins. Co. v. Brock*, 215 S.W.2d 370 (Tex.Civ. App.—Dallas 1948, writ ref'd n.r.e.), which upheld coverage for an injured pedestrian who fell into an elevator shaft left open by the insured's employees during a commercial delivery. The court concluded that there was a causal relationship between the use of the insured's truck and the accident because the accident occurred during a commercial delivery. *American Employers Insurance*, however, is not controlling because it was decided under different policy provisions and prior to the Supreme Court's adoption of the "complete operation" rule in *Travelers*, and here, Esquivel had completed delivery.

Acceptance also cites *Red Ball Motor Freight v. Employers Mut. Liability I. Co.*, 189 F.2d 374 (5th Cir.1951), which extended coverage for an explosion and fire arising out of "the ownership, maintenance, or use of the automobile." However, *Red Ball Motor Freight* is not controlling because (1) the loading and unloading of cargo was not involved, (2) coverage was upheld under the "ownership, maintenance, or use of the automobile" provision of older policies, whereas modern policies include a loading and unloading clause and, (3) it predates the *Travelers* decision which approved and adopted the "complete operation" rule for the loading and unloading of cargo.

Acceptance also relies on *Hartford Fire Ins. v. Rainbow Drilling*, 748 S.W.2d 262 (Tex.App.—Houston [14th Dist.] 1988, no writ), to support its argument that the unloading of the base was not complete because only a portion of the base had been dumped at the construction site and many loads had yet to be deposited by Esquivel. *Hartford Fire Insurance* involved injuries sustained during the transportation of an oil well drilling rig. The court held that transportation of a drilling rig, analogous to the "unloading" of ready-mix concrete in *Travelers*, was "not complete until the gin pole trucks have completed the lifting and placing the components of the drilling rig in proper position so the parts can be reassembled." *Id.* 748 S.W.2d at 266. *Hartford Fire Insurance*, however, does not apply to the instant case because when the base was unloaded at the construction site, nothing more was required of Esquivel regarding the unloaded base.

Acceptance also asserts that coverage for Prichard's injuries does not exist under its policy because of its exclusion for damages arising out of the loading or unloading of an automobile. We disagree. If valid, this contention would have required Esquivel to complete the entire construction contract by delivering and unloading all of the base necessary for the entire road construction

project before "unloading" could be completed. However, in *Commercial Standard,* the Court stated that the pertinent inquiry is not whether the contract had been completed, but whether the unloading operation under the terms of the policy had been completed. *Commercial Standard,* 455 S.W.2d at 717. Therefore, having previously concluded that the unloading operation had been completed and that Prichard's injuries did not arise out of the loading or unloading of the base, and that the Acceptance exclusion is not applicable to deny coverage, the Acceptance policy afforded coverage for Prichard's injuries.

Home State contends the trial court erred in rendering judgment that Acceptance recover $25,000.00 from Home State and that Home State take nothing from Acceptance because the summary judgment evidence showed as a matter of law that Home State should recover $15,000.00, plus attorney's fees in the amount of $7,667.58 pursuant to the settlement agreement. We agree.

Pursuant to the settlement agreement which was included as summary judgment evidence, Acceptance agreed to pay Home State $15,000.00, plus attorney's fees in the amount of $7,667.58 if Acceptance was found to have coverage for Prichard's injuries. Based on the rationale expressed herein, the Acceptance policy provided coverage for Prichard's injuries and therefore, we render the judgment the trial court should have rendered that Acceptance pay Home State $15,000.00, plus attorney's fees in the amount of $7,667.58. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). We sustain points of error two, four, and six.

Accordingly, having sustained points of error one through six, we reverse the judgment of the trial court and render judgment that Home State recover from Acceptance $15,-000.00, plus attorney's fees in the amount of $7,667.58.