TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00626-CV






Jonah Water Special Utility District, Appellant


v.


Aaron Keith White and Lance White, Appellees






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 02-647-C368, HONORABLE BURT CARNES, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N

 Jonah Water Special Utility District ("Jonah"), appellant, provided water services to
Aaron Keith ("Keith") White and Lance White (collectively, "the Whites"), appellees. Related
disputes arose, and the Whites sued to recover for breach of Keith White's service contract and
damage to their property. They also sought a declaration that Jonah's easement on their property was
invalid and an injunction prohibiting Jonah from entering their property. Upon a jury verdict
favorable to the Whites, the district court awarded the Whites $9,848.68 on their contract claim,
$4,000 on their negligence claim, and $71,000 in attorney's fees. The court held as a matter of law,
however, that Jonah's easement was valid and an injunction was unavailable. Jonah appeals the
monetary awards, arguing that the contract claim was barred by governmental immunity, the
negligence claim was not supported by legally sufficient evidence, and the award of attorney's fees
was inequitable and unjust. We will reverse the trial court's judgment as to the contract claim and
the award of attorney's fees, and we will affirm it as to the negligence claim.


FACTUAL AND PROCEDURAL BACKGROUND

 The land at issue is an eighty-acre tract in rural Williamson County that has been in
the Whites' family for at least three generations. In 1974, the Whites' grandparents contracted with
Jonah Water Corporation for water service on the land. They granted the Corporation an easement
on the property to facilitate service. 

 In 1988, appellee Keith White obtained title and moved onto the land. He entered
into his own service agreement with Jonah Water Corporation. Among other things, the agreement
required him to pay a $2,500 membership fee. In 1992, Jonah Water Corporation dissolved and
reformed as Jonah Water Special Utility District, making it a governmental rather than private entity. 
This reformation had no immediate practical impact on Mr. White's service agreement; until 2002,
Mr. White and Jonah proceeded under the terms of the 1988 service agreement. In 1995, Mr.
White's brother, Lance White, moved into a second house on the property and also began receiving
services from Jonah. 

 In January 2002, a dispute arose regarding Keith White's payment of bills. This
dispute eventually led to Jonah's disconnecting Keith White's water, removing his water meter, and
relocating Lance White's water meter. In removing and relocating the meters, Jonah damaged the
Whites' property, and the Whites spent roughly $8,000 preparing a well to serve as a replacement
water source for Keith White. Jonah also damaged the Whites' property on other occasions while
attempting to repair underground water pipes.

 Though Keith White tried repeatedly to settle his payment dispute with Jonah, Jonah
refused to reconnect his water or refund his $2,500 membership fee. The Whites eventually sued. 
They sought to recover Keith White's membership fee and the costs of preparing the well,
characterizing both as contractual damages arising from Jonah's breach of Keith White's service
agreement. The Whites also sought to recover for the property damage Jonah caused. In addition,
the Whites sought a declaration that Jonah's easement was invalid and an injunction prohibiting
Jonah from further entering their property. (1) Finally, the Whites sought attorney's fees on their
contract and declaratory judgment causes of action. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 38.001(8) (authorizing award of attorney's fees in certain contract actions), 37.009 (authorizing
award of attorney's fees in declaratory relief actions) (West 2008).

 After a five-day trial, a jury found for the Whites on their contract and negligence
claims and found that the Whites reasonably incurred $71,000 in attorney's fees. The trial court
refused to submit a jury question on the Whites' declaratory relief claim. Instead, the court
concluded as a matter of law that Jonah's easement was valid (which obviated the requested
injunction). In its final judgment, the court awarded the Whites the contract damages, negligence
damages, and attorney's fees calculated by the jury. 

 Jonah appeals the contract, negligence, and attorney's fees awards. It argues that the
contract award was barred because Jonah was protected by governmental immunity from such
claims. It also argues that the Whites' negligence evidence was legally insufficient because the
Whites did not provide expert testimony to show the proper standard of care. Finally, it argues that
awarding attorney's fees was inequitable because the Whites did not prevail on their declaratory
relief claim and should not have prevailed on their contract claim.


STANDARD OF REVIEW

 We review de novo questions of governmental immunity. See Texas Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). We review de novo "a trial
court's determination regarding whether expert testimony is necessary to prove a negligence claim." 
FFE Transp Serv., Inc. v. Fulgham, 154 S.W.3d 84, 90 (Tex. 2004). We review for abuse of
discretion a trial court's award of attorney's fees. Ridge Oil Co., Inc. v. Guinn Invs., Inc.,
148 S.W.3d 143, 163 (Tex. 2004). "The trial court abuses its discretion if its ruling that attorney's
fees were recoverable was arbitrary or unreasonable." Cadle Co. v. Harvey, 46 S.W.3d 282, 288
(Tex. App.--Fort Worth 2001, pet. denied). 

 

DISCUSSION

The Whites' Contract Claim

 A trial court has subject matter jurisdiction over claims against a governmental entity
only if the entity's immunity from suit has been waived. See Texas Dep't of Transp. v. Jones,
8 S.W.3d 636, 638 (Tex. 1999) (per curiam). Waiver of governmental immunity must be clear and
unambiguous. Tooke v. City of Mexia, 197 S.W.3d 325, 333 (Tex. 2006). Jonah argues that because
its immunity has not been clearly and unambiguously waived for contract claims like the one at
issue, the trial court lacked subject matter jurisdiction over the Whites' contract claim. We agree.

 Jonah is a general law district created under article XVI, section 59 of the
Texas Constitution. As a result, it qualifies as a political subdivision of the State of Texas,
Willacy County Water Control & Improvement Dist. No. 1 v. Abendroth, 177 S.W.2d 936, 937
(Tex. 1944), and enjoys governmental immunity from suit absent express waiver, Harris County v.
Sykes, 136 S.W.3d 635, 639 (Tex. 2004). It is also subject to section 49 of the Texas Water Code. 
See Tex. Water Code Ann. § 49.002(a) (West 2008). 

 The Whites argue here, as they did below, that section 49.066(a) of the Water Code
expressly waives Jonah's immunity from suit. Section 49.066(a) states: "A district may sue and be
sued in the courts of this state in the name of the district by and through its board." The Texas
Supreme Court has recently held, however, that "sue or be sued" language does not necessarily
constitute a waiver of immunity. See Tooke, 197 S.W.3d at 342. Every court to interpret
section 49.066(a) in light of Tooke has concluded that section 49.066(a) does not waive
governmental immunity. See Boyer, Inc. v. Trinity River Auth. of Texas, 279 S.W.3d 354, 358
(Tex. App.--Fort Worth 2008, pet. filed); Clear Lake City Water Auth. v. Friendswood Dev. Co.,
Ltd., 256 S.W.3d 735, 745 (Tex. App.--Houston [14th Dist.] 2008, pet. dism'd); Bexar Metro.
Water Dist. v. Educ. and Econ. Dev. Joint Venture, 220 S.W.3d 25, 32 (Tex. App.--San Antonio
2006, pet. dism'd); Valley Mun. Util. Dist. No. 2 v. Rancho Viejo, Inc., No. 13-07-545-CV,
2008 Tex. App. LEXIS 1109, at *11 (Tex. App.--Corpus Christi Feb. 14, 2008, no pet.) (mem. op.). 
We agree with our sister courts and hold that section 49.066(a) does not waive Jonah's immunity
from suit. Instead, it merely indicates that Jonah may be a party to litigation in Texas courts if its
immunity is otherwise waived. See Clear Lake Water Auth., 256 S.W.3d at 743-44 (citing, inter alia,
Tooke, 197 S.W.3d at 344). 

 The Whites argue that even if section 49.066(a) does not waive Jonah's immunity,
Local Government code section 271.152 does. Section 271.152 states:


A local governmental entity that is authorized by statute or the constitution to enter
into a contract and that enters into a contract subject to this subchapter waives
sovereign immunity to suit for the purpose of adjudicating a claim for breach of the
contract, subject to the terms and conditions of this subchapter.



Tex. Loc. Gov't Code Ann. § 271.152 (West 2006). The relevant subchapter applies, however, only
to contracts "for providing goods or services to the local governmental entity." Id. § 271.151(2)
(emphasis added). The contract at issue here concerns the provision of services by a local
government entity, Jonah, to a member of the public; thus, section 271.152 does not waive Jonah's
immunity. See BenBolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions
Property/Casualty Join Self-Ins. Fund, 212 S.W.3d 320, 329-30 (Tex. 2006) (Willet, J., dissenting)
(emphasizing section 271.152's requirement that contract provide goods or services to
governmental entity for waiver). Accord Seureau v. ExxonMobil Corp., 274 S.W.3d 206, 217
(Tex. App.--Houston [14th Dist.] 2008, no pet.) (finding no waiver of immunity under section
271.152 where contract does not concern provision of goods or services to governmental entity). 
Cf. Ben Bolt, 212 S.W.3d at 328 (finding waiver of immunity under section 271.152 because contract
concerns provision of services to governmental entity); City of Alton v. Sharyland Water Supply
Corp., 277 S.W.3d 132, 144 (Tex. App.--Corpus Christi 2009, pet. filed) (same).

 The Whites next argue that even if Jonah's immunity was not waived by statute, it
was waived by Jonah's conduct. The Texas Supreme Court initially hinted that a governmental
entity might waive its immunity by conduct in certain circumstances, see Federal Sign v. Texas
S. Univ., 951 S.W.2d 401, 408 n.1 (Tex. 1997), but more recent cases have found contract
disputes not to qualify. See, e.g., IT-Davy, 74 S.W.3d at 857 ("Because we have consistently held
that only the Legislature can waive sovereign immunity from suit, allowing other governmental
entities to waive immunity by conduct that includes accepting benefits under a contract
would be fundamentally inconsistent with our established jurisprudence and with the existing
legislative scheme."). 

 We have found only one post-IT-Davy opinion holding that a governmental entity
waived its immunity by conduct: Texas Southern University v. State Street Bank and Trust
Company, 212 S.W.3d 893, 908 (Tex. App.--Houston [1st Dist.] 2007, pet. denied). The Whites
rely heavily on State Street, but, as they admit, that case involved "extraordinary factual
circumstances." Id. at 907. In fact, the State Street court itself noted that "[t]he Texas Supreme
Court has never addressed a waiver-by-conduct exception argument faced with the 'extraordinary
factual circumstances' as the trial court described them here." Id. In State Street, government
officials induced the plaintiff to enter a contract and then refused to make payments under it,
claiming that the contract was invalid. Id. at 908. Here, in contrast, the record does not indicate that
Jonah procured a contract with promises it intended to break. While Jonah's conduct may have been
less then exemplary in some regards, it was not sufficiently egregious vis-à-vis the contract to
warrant a break with Texas Supreme Court precedent. Unlike the governmental entity in
State Street, Jonah performed under the contract for many years, and this lawsuit appears to have
grown out of what was initially a good-faith disagreement over Keith White's performance under
the contract. We therefore hold that Jonah did not waive its governmental immunity by conduct. 
Cf. IT-Davy, 74 S.W.3d at 861 (Hecht, J., concurring) (no waiver by conduct in an "ordinary contract
dispute"); Slade v. Texas S. Univ. Bd. Of Regents, 232 S.W.3d 395, 400 (Tex. App.--Houston
[1st Dist.] 2007, no pet.) (distinguishing State Street, and finding no waiver by conduct, where
defendant admitted contract was valid and did not attempt to avoid enforcement of settlement claim).

 Finally, the Whites argue that Jonah should be estopped from asserting governmental
immunity. This argument also fails. While a governmental entity may be estopped from taking
certain actions, see, e.g., City of Corpus Christi v. Gregg, 289 S.W.2d 746, 752 (Tex. 1956) (city
estopped from cancelling lease), we have found no case in which a governmental entity was estopped
from asserting immunity. Such a result would vitiate entrenched judicial policies. See Tooke,
197 S.W.3d at 332 (courts "defer to the Legislature to waive immunity from contract claims");
Tourneau Houston, Inc. v. Harris County Appraisal Dist., 24 S.W.3d 907, 910 (Tex. App.--Houston
[1st Dist.] 2000, no pet.) ("No one is ever estopped from asserting lack of subject-matter
jurisdiction."). The San Antonio Court of Appeals has suggested that estoppel-based waiver of
immunity might be possible, see Bexar Metro. Water Dist., 220 S.W.3d at 32, but a single
hypothetical reference by one of our sister courts does not outweigh the considerable authority to
the contrary. (2)

 In sum, the trial court had no statutory or equitable basis to conclude that Jonah
waived immunity from suit on the contract at issue. Thus, the court should have dismissed the
Whites' contract claim for lack of subject-matter jurisdiction. We sustain Jonah's first point of error.


The Whites' Negligence Claim

 Jonah next argues that the Whites' negligence claim was not supported by legally
sufficient evidence because no expert witness testified on the standard of care governing Jonah's on-site activities. "'Expert testimony is necessary when the alleged negligence is of such a nature as
not to be within the experience of the layman.'" Fulgham, 154 S.W.3d at 90 (quoting Roark v. Allen,
633 S.W.2d 804, 809 (Tex. 1982)). In making this determination, "Texas courts have considered
whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to
the ordinary person." Id. at 91. Where expert testimony is found necessary, failure to produce such
testimony bars recovery. See Hager v. Romines, 913 S.W.2d 733, 735-36 (Tex. App.--Fort Worth
1995, no pet.) (rendering take-nothing judgment against plaintiffs who failed to produce necessary
expert testimony on applicable standard of care). Here, the trial court impliedly concluded that
expert testimony was not necessary, but that is a question of law that we review de novo. Fulgham,
154 S.W.3d at 89-90.

 In the present case, the Whites pleaded the "alleged negligence" of Jonah's employees
in exceedingly general terms:


 On April 30, 2002, Plaintiffs suffered property damage when Defendant
Jonah removed its water meter from Plaintiffs' property and left the area surrounding
the former location of the water meter and other areas within the easement in a
serious state of disrepair. At the time of the accident, unknown employees of
Defendant Jonah were operating defendant's backhoe, bulldozer or other related earth
moving and excavation equipment negligently. . . . [The unknown employees] had
a duty to exercise ordinary care and operate the bulldozer and related equipment
reasonably and prudently. Defendant breached that duty when it negligently caused
damages to Plaintiffs' property in the course of removal of its water meter.

 On or about August 22, 2003, Defendant Jonah caused additional damage to
Plaintiffs' real property while Jonah was attempting to repair a water main break in
its pipeline.



 At trial, the Whites presented evidence that Jonah performed many different activities
negligently. Under the Tort Claims Act, however, a party can recover for governmentally caused
property damage only if the damage "arises from the operation or use of a motor-driven vehicle or
motor-driven equipment." Tex. Civ. Prac. & Rem. Code § 101.021(1)(A) (West 2005). The
motor-driven equipment must directly cause the damage for it to be compensable. Dallas Area
Rapid Transit v. Whitley, 103 S.W.3d 540, 543 (Tex. 2003). At trial, the Whites testified regarding
several kinds of damage that potentially satisfy this requirement, including (1) erosion, uneven
surfaces, and soil infertility caused by backhoe excavation, and (2) ruts caused by backhoes moving
across their property. 

 A backhoe is indisputably "specialized equipment," and certain aspects of operating
a backhoe undoubtedly involve "techniques unfamiliar to the ordinary person." Fulgham,
154 S.W.3d at 91. Even when specialized equipment and techniques are involved, however, expert
testimony is unnecessary if lay jurors can, as a matter of common sense, analyze the specific conduct
alleged to have been negligent. See Pilgrim's Pride Corp. v. Smoak, 134 S.W.3d 880, 894
(Tex. App.--Texarkana 2004, pet. denied) (expert testimony not necessary to establish negligence
if "general experience and common sense" allow jurors to conduct fair analysis). Indeed, even
within the highly specialized area of medicine, expert testimony is not required where "the mode or
form of treatment is a matter of common knowledge or is within the experience of the layman." 
Hood v. Phillips, 554 S.W.2d 160, 165-66 (Tex. 1977).

 Here, the Whites' allegations of negligence were sufficiently general and indefinite
that they do not show that Jonah's "'alleged negligence is of such a nature as not to be within the
experience of the layman.'" Fulgham, 154 S.W.3d at 90 (quoting Roark, 633 S.W.2d at 809). Put
another way, the Whites' pleadings alleged that Jonah was negligent but did not clearly show that
Jonah was negligent in a way that necessitated expert testimony. Jonah did not file special
exceptions seeking to require the Whites to plead more specifically.

 At trial, the Whites testified that Jonah employees began excavating to access a leaky
pipe and then had to move their backhoe upon realizing they initially dug in the wrong place. 
Having to reposition a backhoe and dig multiple holes would seem to suggest some sort of
negligence, but it does not necessarily suggest the kind of negligence that is outside the experience
of laypersons. A similar analysis would apply to Jonah's other allegedly negligent actions. For
example, the Whites testified that Jonah caused property damage by excavating in areas that were
highly erodible. Excavating in areas that are highly erodible could suggest some sort of negligence,
but it does not necessarily suggest the kind of negligence that requires expert testimony. Thus, it
appears that the Whites did not complain of an incorrect technical operation of the backhoe itself,
but instead complained of more general actions such as not knowing where to dig.

 Nor is it clear from the record what sort of negligence the jury found to have been
committed by Jonah's employees. The jury question pertaining to negligence, like the Whites'
pleadings and evidence of negligence, was general and nonspecific: "Did the negligence, if any, of
Jonah Water S.U.D. proximately cause the occurrence or injury in question?" To prevail on appeal,
therefore, Jonah must show that the negligence issue should not have gone to the jury in the first
place. See Hager, 913 S.W.2d at 735-36 (rendering judgment for appellant where trial court
should not have submitted negligence claim to jury). Jonah tries to make this showing only by
arguing that the Whites failed to offer necessary expert testimony. This argument could succeed
if Jonah's alleged negligence were demonstrably "of such a nature as not to be within the
experience of the layman," but, as discussed above, the record does not establish as much. Fulgham,
154 S.W.3d at 90.

 As the appellant, Jonah bore the burden of showing that the trial court committed
error that probably resulted in an improper judgment. Englander Co. v. Kennedy, 428 S.W.2d 806,
807 (Tex. 1968) ("The burden is upon a party appealing from a trial court judgment to show that the
judgment is erroneous in order to obtain a reversal."). Here Jonah did not satisfy that burden because
it did not show that the "alleged negligence" of which the Whites complained was of such a nature
as not to be within the experience of laypersons. We overrule Jonah's second point of error. 


Attorney's Fees

 Finally, Jonah argues that the trial court abused its discretion by awarding the Whites
attorney's fees. The Whites sought attorney's fees under two separate statutes: Civil Practice and
Remedies Code section 38.001(8), which permits the award of attorney's fees for contract claims,
and Civil Practice and Remedies Code section 37.009, which permits the award of "equitable and
just" attorney's fees in declaratory relief actions.

 As discussed above, Jonah was governmentally immune from the Whites' contract
claim. That claim was therefore not a proper basis for awarding attorney's fees. See Green Int'l, Inc.
v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (party must prevail on contract claim to recover attorney's
fees under chapter 38). In addition, the trial court denied the Whites declaratory relief as a matter
of law. (3) This suggests that the Whites' declaratory relief claim was not a proper basis for awarding
attorney's fees either. See Ski River Dev., Inc. v. McCalla, 167 S.W.3d 121, 143 (Tex. App.--Waco
2005, pet denied) (reversing attorney's fees award because declaratory relief was unwarranted);
Hartford Fire Ins. Co. v. Rainbow Drilling Co., 748 S.W.2d 262, 267 (Tex. App.--Houston
[14th Dist.] 1988, no writ) ("where a trial court denies declaratory relief . . . , it is an abuse of
discretion to award attorney's fees to a party that is not entitled to any relief."). We therefore reverse
the trial court's attorney's fees award. 


CONCLUSION

 The Whites' contract claim was barred by governmental immunity, but we cannot
conclude on the record before us that the Whites' negligence claim failed for lack of expert
testimony. We therefore reverse the trial court's judgment as to the Whites' contract claim and
render judgment that the Whites take nothing on that claim. On the Whites' negligence claim, we
affirm the trial court's judgment. We reverse the trial court's award of attorney's fees and render
judgment that the Whites take nothing on that claim.


 __________________________________________

 J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson;

 Dissenting Opinion by Justice Puryear

Affirmed in Part; Reversed and Rendered in Part

Filed: August 31, 2009

1. The Whites argued that the easement was invalid because it did not adequately describe
their property; while the easement purported to burden the Whites' land as it was described on a
particular page of Williamson County's deed records, the Whites' land was actually described on
a different page of the records. The page referred to in the easement is actually a trust document
executed by someone wholly unrelated to this dispute. 
2. We note that the Bexar Metropolitan Water District court based its suggestion on cases
that did not involve immunity. See Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture,
220 S.W.3d 25, 32 (Tex. App.--San Antonio 2006, pet. dism'd) (citing City of Hutchins v. Prasifka,
450 S.W.2d 829, 836 (Tex. 1970), and Gregg, 289 S.W.2d at 751). We also note that the
San Antonio court refused to find estoppel on the facts before it. See id. 
3. The Whites argue in their appellate brief that this ruling was an abuse of discretion. 
Because the Whites did not appeal this ruling, however, we disregard their argument. 
See Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment . . . must file a
notice of appeal."); Lubbock County v. Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 584
(Tex. 2002) (appellee waived challenge to judgment by failing to file notice of appeal).