**PAYNE v. HOLMES.**

No. 14207.

Court of Civil Appeals of Texas. Fort Worth.

April 11, 1941.

Rehearing Denied May 30, 1941.

Graves & Collins and Earnest R. Hawkins, all of Fort Worth, for appellant.

Dexter W. Scurlock, of Fort Worth, and Homer B. Latham, of Bowie, for appellee.

McDONALD, Chief Justice.

This suit was brought by appellant R. C. Payne against appellee John W. Holmes. At the close of plaintiff's case the trial court instructed a verdict in favor of defendant.

Payne, the plaintiff below, alleged that he had assembled a block of oil and gas leases in Grayson County, Texas, under an agreement with the landowners that the leases were to be delivered to Payne if he would drill or cause to be drilled and completed, not later than September 1st, 1938, a well producing not less than ten barrels of oil per day; that he made a verbal agreement with the defendant Holmes, whereby the latter was to drill the well in consideration of a part of the acreage so assembled, and certain other agreed considerations, the well and the well tract to be owned by the parties in agreed proportions; that defendant had full notice of the terms of the escrow agreement providing that the leases were to be returned to the landowners in the event of failure to complete the producing well within the required time; that plaintiff in all things complied with the agreement between him and defendant; that defendant breached the contract by drilling only 665 feet by September 1st, although the contract provided that the well should be drilled to a depth of 900 feet; that at the location of the well there is an oil bearing sand at a depth of approximately 880 feet, about 8 feet in thickness, and that if the well had been drilled in a workmanlike manner to a depth of 900 feet, it would have produced not less than

ten barrels per day, whereupon, plaintiff would have been entitled to delivery of the leases he had assembled; but that on account of the failure of defendant to complete the well by September 1st, the leases had to be returned to the landowners and plaintiff thereby lost the value of them. The only measure of damages alleged by plaintiff was the value which the leases would have had if the well had been completed as a producer within the required time.

■ Two of appellant's propositions assert that even if he failed to prove actual damages, it was error on the part of the trial court not to submit the case to the jury for allowance of nominal damages. It was undisputed that the well was not completed by September 1st. Appellant relies upon the line of authorities, some of which are herein cited, holding that a plaintiff is entitled to nominal damages for failure of defendant to perform a duty or contract, even though no actual damages be shown. Hillebrant v. Brewer, 6 Tex. 45, 55 Am.Dec. 757; Lawless v. Evans, 4 Willson Civ.Cas.Ct.App. § 26, 14 S.W. 1019; Davis v. Texas & Pacific Ry. Co., 91 Tex. 505, 44 S.W. 822; Miller v. Moore, Tex.Civ.App., 111 S.W. 750; Flournoy v. Story, Tex.Civ.App., 37 S.W.2d 272.

We observe that appellant does not request us to reverse the judgment below and render judgment here for only nominal damages. As was the case in Mitchell v. Heard, Tex.Civ.App., 98 S.W.2d 832, plaintiff in this case was not seeking nominal damages. He alleged and sought to prove that the damages he suffered, the value of the leases lost, aggregated $40,007.50. There is nothing in the record to indicate that he made any effort in the trial court to recover nominal damages in the alternative, or that he made any request of the trial court for a submission of nominal damages. The reasonable conclusion to be drawn from the record before us is that appellant seeks a reversal of the case on the ground of failure to submit the question of nominal damages, but for the purpose of having a second opportunity to try the issues of actual damages. As is said in Allbritton v. Mading's Drug Stores, Inc., Tex.Civ.App., 138 S.W.2d 901, 904:

"Having failed to request a judgment of the trial court for nominal damages and costs of court, and having failed to request such judgment in this court, appellants have waived any right they may have had for such a judgment and are not entitled upon appeal to have this case remanded and a new trial granted."

See, also, Morin v. Houston Press Co., Tex.Civ.App., 103 S.W.2d 1087, and De Garza v. Magnolia Petroleum Co., Tex.Civ. App., 107 S.W.2d 1078, writ of error dismissed.

■ Appellant alleged, and contends that he proved as a fact, that there is an oil bearing sand 8 feet thick at the location of the well, and that a well properly drilled will produce not less than ten barrels per day. He contends, therefore, that if the well had been drilled properly and completed according to schedule, appellant would have become the owner of oil leases worth $40,000. He asserts that this figure represents the measure of his damages for breach of the contract. Appellee, on the other hand, contends that the allegations and proof establish that this is wildcat, as distinguished from producing, acreage, and that in such case appellant is not entitled to assert a theory of damages based upon production values, as being too remote, conjectural and speculative. Appellee argues that for such reason it would have been proper for the trial court to sustain a general demurrer to appellant's petition. Without attempting to determine whether appellant has presented a proper measure of damages in a case such as this one, we hold that the evidence was insufficient as a matter of law to show, either that there was an oil bearing sand at this location, or that the failure to discover oil in this well was due to any improper drilling methods, or what the value of appellant's leases would have been had oil been found. There was no evidence of probative force tending to show that a ten-barrel producer would have been found had the well been drilled in a workmanlike manner and completed by September 1st. Therefore there was no proof that the breach of the contract caused appellant any damage.

Defendant was called to the stand by the plaintiff, and testified that the well was drilled to a depth of 910 feet, below the contract depth, by September 15th, and that no oil was found. Plaintiff offered no proof that the well was not drilled to the contract depth, and offered no proof that oil was found. Although he testified that some unworkmanlike practices were being followed when the well was about 700 feet deep, he offered no testimony to show any improper practices which might have pre-

vented oil being found at the depth where he alleged the oil bearing sand was to be found. For the purpose of showing that defendant would have found oil had he drilled the well in a workmanlike manner, plaintiff offered certain testimony, which we shall detail, regarding a well drilled near the same location in 1927, referred to as the Burnham well.

M. L. Luckett, by deposition, testified that he was the driller on the Burnham well; that he had had 22 years' experience in the oil fields; that a good showing of oil was found at 880 feet; that hard lime was encountered at 860 feet, and that after drilling in the hard lime for 20 feet the bit dropped 8 feet in a few minutes; that heavy oil appeared in the ditch and flowed out into the slush pit; that he attempted to take a core of the sand; that it showed coarse brown sand saturated with oil; that witness believed if casing had been set and the sand had been tested the well could have been completed as a commercial producer at 880 to 888 feet; that witness believes a well drilled properly in 1938 would be a commercial producer of ten barrels or more. The witness testified that the possibilities of the sand could not be known without a test. He offered no explanation as to why a producer was not made of the Burnham well.

Joe Burnham testified by deposition that he drilled the Burnham well for himself and his associates; that a showing of oil was encountered at 888 feet; that the oil showed up on the slush pit through the mud, and that fragments of oil sand were found mixed with cuttings from the well at this depth; that a core was taken and nothing found but shale; that the 8 feet of soft formation might if drilled with a bit have had enough saturation to produce an oil well; that testing the well would be the only way to find whether it would produce; and that the size of the well could not be estimated until tested.

A. J. Souther testified by deposition that he was a farmer; that he was employed as a fireman and roustabout on the Burnham well; that he saw the showing of oil just mentioned; that when the oil first began to show the driller closed down the well and sent for Mr. Burnham; that they all waited until the geologist arrived; that Mr. Luckett, Mr. Burnham and the geologist examined the sand taken in the core, and after talking awhile, instructed the crew to resume drilling.

Plaintiff also offered the interesting testimony of a witness named Rex King, who testified that he was a geologist. He testified he received the degree of Master of Geology after attending a school in Lexington, Kentucky, for six months, but upon cross-examination could not remember the name of the school, or the name of the street upon which it was located. But he said he did remember the name of his teacher, a Professor Crump. He testified that he worked with two Government geologists in Texas fifty years ago, laying out the oil pools for the Government. He appeared at the trial with some rocks he had picked up near the well, and testified that by examining these rocks he could tell that there was an oil field there, and that the wells would produce fifty barrels per day. Counsel for defendant asked him if he knew the meaning of the word "permeability". He replied vaguely that he thought it had to do with the Permian Basin. He was a little hazy as to the meaning of the term "porosity", and not quite clear as to "bottom-hole pressure". On redirect examination he said that such terms had nothing to do with geology, and that they were terms he had forgotten 25 years ago.

Both plaintiff and the self-styled geologist King testified as to the values of the various leases, conditioned upon there being a ten-barrel producer at the location in question. Such matters as production costs, geological trends, proration, kind and quality of the oil, and countless other items which affect lease values in producing territory were not referred to by these witnesses, who were the only witnesses on values.

The proof offered by plaintiff, both as to the fact of the area being productive, and as to the lease values, falls far short of the requirements set out in Logan v. Elliott, Tex.Civ.App., 61 S.W.2d 157, writ of error dismissed, and Taubert v. Earle, Tex.Civ.App., 133 S.W.2d 145, writ of error refused, and authorities therein cited. We refer to those cases, and will not repeat what is said in them.

Judgment of the trial court is affirmed.