The **TRAVELERS INSURANCE COMPANY,**
Petitioner,

v.

**EMPLOYERS CASUALTY COMPANY,**
Respondent.

No. A–9808.

Supreme Court of Texas.

June 17, 1964.

Rehearing Denied July 15, 1964.

Gay & Meyers, Austin, for petitioner.

Leachman, Gardere, Akin & Porter and Gordon H. Rowe, Jr., Dallas, for respondent.

WALKER, Justice.

This controversy between two insurance companies arises out of an accident in which three employees of M. Z. Collins lost their lives. Collins was the general contractor for the construction of a new high school in Austin, and Borders Steel Erection Company was one of the subcontractors. Mixed concrete for the job was furnished to Collins by Capitol Aggregates, Inc. The workmen were killed when a crane owned and operated by Borders collapsed while it was being used to transport concrete from Capitol's ready-mix concrete truck to the concrete forms of the general contractor.

Employers Casualty Company was the automobile insurer of Capitol, and The Travelers Insurance Company was the general liability insurer of Borders. Travelers paid the beneficiaries of the deceased workmen a total of $61,020.30 in settlement of their claims, and then brought this suit against Employers to establish the latter's liability for the amount of the settlement plus attorney's fees and expenses of investigation. The case was tried to the court without a jury, and judgment was rendered that Travelers take nothing. No findings of fact or conclusions of law were filed or requested.

The judgment of the trial court was affirmed by the Court of Civil Appeals at Dallas, which held that the accident did not arise out of the unloading of the truck within the meaning of the policy issued by Employers. 370 S.W.2d 105. A similar conclusion had previously been reached by a majority of the Court of Civil Appeals at Austin in the appeal from the order sustaining Employers' plea of privilege. Travelers Ins. Co. v. Employers Casualty Co., Tex.Civ.App., 335 S.W.2d 235 (writ ref. n. r. e.). On the basis of the authorities cited by the parties at that time, it was then our opinion that the policy issued by Employers did not protect Borders. In view of our refusal to grant a writ of error in the earlier appeal, the Court of Civil Appeals at Dallas naturally felt it was bound by that decision. Upon further consideration and in the light of the additional authorities now cited by the parties, we have concluded that Borders was covered by the automobile liability policy under the facts of this case.

The policy issued by Employers to Capitol contains the following provisions:

"I. Coverage A. Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.

\* \* \* \* \* \*

"III. Definition of Insured. The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission \* \* \*.

"IV. Purposes of Use Defined. (a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in the declarations including occasional use for personal pleasure, family and other business purposes. (c) Use of an automobile includes the loading and unloading thereof."

Employers thus agreed to pay on behalf of any person loading or unloading the truck with the consent of Capitol all sums which such person might become legally obligated to pay as damages because of bodily injury, including death at any time resulting therefrom, caused by accident and arising out of the loading or unloading of the truck. The question to be decided then is whether the deaths of the three workmen arose out of the unloading of the truck within the meaning of the policy.

■ The courts of other jurisdictions are not in agreement as to what is covered by the "loading and unloading" clause of an automobile liability policy. According to the minority view, loading begins when the transported object has been brought into the immediate vicinity of and is being physically carried or lifted into the vehicle, and unloading ends when the object reaches a place of rest and is no longer being carried or lifted off the vehicle. This is generally referred to as the "coming to rest" rule. "The broader construction, adopted in a majority of the jurisdictions which have passed upon the question, is that 'loading and unloading' embrace, not only the immediate transference of the goods to or from the vehicle, but the 'complete operation' of transporting the goods between the vehicle and the place from or to which they are being delivered." See Wagman v. American Fidelity & Casualty Co., 304 N.Y. 490, 109 N.E.2d 592. See also Risjord, Loading and Unloading, 13 Vanderbilt Law Rev. 903; Annotation, 160 A.L.R. 1259. The foregoing statements of the two opposing views are subject to certain qualifications in particular cases, but with this reservation we approve and adopt the majority rule as representing the proper approach to a determination of the coverage afforded by the clause in question. See American Employers' Ins. Co. v. Brock, Tex.Civ.App., 215 S.W.2d 370 (writ ref. n. r. e.).

Turning now to the specific problem presented here, ready-mix concrete must be used within thirty minutes to an hour after it is discharged from the truck. Unlike steel or brick it cannot be stored at the construction site indefinitely, and for that reason is ordered as needed and must be placed in the forms promptly. In the present case Capitol sent its ready-mix concrete trucks to the general contractor at the site where the new high school was being constructed. Where it was possible to do so, the trucks were driven up to the concrete forms and the concrete was emptied directly into the forms. When the forms were inaccessible, the concrete was emptied into the contractor's bucket or into a con-

veyor system and transported to the forms in that manner. On the occasion when the three men were killed, Capitol had delivered some ready-mix concrete to the construction site and the same was being unloaded from the truck and carried to the forms by means of a bucket attached to Borders' crane. After the contents of one of the trucks had been emptied into the bucket and while the crane was moving the bucket filled with concrete toward the forms, the crane buckled and fell, inflicting the fatal injuries.

There are four decisions by trial and intermediate appellate courts of other jurisdictions involving the unloading of ready-mix concrete trucks. Two of them were on facts substantially similar to those outlined above, and in both it was held that the crane operator was covered by the liability policy on the truck. Lamberti v. Anaco Equipment Co., 16 A.D.2d 121, 226 N.Y.S.2d 70; St. Paul Mercury Ins. Co. v. Huitt, D.C. Mich., 215 F.Supp. 709. Our study of these cases convinces us they are correctly decided and should be followed in so far as they deal with the problem now under consideration. See also Pavlik v. St. Paul Mercury Ins. Co., 7th Cir., 291 F.2d 124; Travelers Ins. Co. v. General Casualty Co., D.C.Idaho, 187 F.Supp. 234. As pointed out by the court in Lamberti:

> "The respondent contends that the place of delivery was the bucket of the crane and, therefore, the unloading operation was completed when the concrete had been placed in the bucket. We cannot agree. The bucket cannot be considered 'the place * * * to which' the concrete was being delivered. It was merely the necessary conduit by which the concrete was conveyed to its place of delivery. The trip in the bucket to such place of delivery was merely an incident in the unloading operation. Indeed, because of the manner of the operation, the truck could not have been unloaded other than by the repeated trips of the bucket from the truck to the place of

use of the concrete. The employment of the crane and the bucket was just as essential a part of the complete operation of unloading as was the discharge of the concrete from the truck into the bucket. * * * The means by which the material is removed from a truck is of no particular consequence, whether the removal be effected by a rack, by hand or by a crane * * *. The sole test is whether the means used was in the process of unloading. In this case the bucket was merely an instrument to effect the unloading.

> \*   \*   \*   \*   \*   \*

> "It is not unfair to the insurance carrier to hold that the delivery function was not complete until the concrete reached its ultimate destination. Particularly so in the case of mixed concrete where there could be no intermediate place of sojourn. By the very nature of that material it is essential that it be taken directly from the delivery truck to the place at which it becomes a permanent portion of the construction. Concrete, unlike lumber or other building materials, cannot be stored at the job site for later incorporation into the structure. It must be deposited immediately at its permanent resting place. It is for that very reason that a transit-mix truck is used in this type of operation. If it were the intention of the insurer to confine its liability to a more circumscribed aspect of the loading process, language appropriate to such end could have been employed. * * *"

Employers relies on the testimony of M. Q. Haile, Jr., Vice President and Manager of Capitol, that the concrete belonged to Collins when it was placed in the bucket, that Capitol's employees thereafter had no control over the same, and that such employees had no control over the crane. It says that this evidence demonstrates that delivery had been made and the unloading operation completed. In American Employers' Ins. Co. v. Brock, supra, the court

quoted from the opinion in Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251, where it was said that under the complete operation doctrine "loading or unloading" includes the entire process involved in the movement of the articles from the place where the insured's employees find the articles which are to be moved by truck *to the place where the employees of the insured turn them over to the party to whom they are to make delivery.* In using this language, the Supreme Court of Utah evidently was thinking of the ordinary case where the unloading is done by the named insured or his employees. It certainly did not intend to say that a consignee who accepts delivery on the truck will not be protected while lifting the articles out of the vehicle.

:

■■ As indicated above, the rule cannot be *stated in general terms* that will explain all of its applications. Where an additional insured is involved, "delivery" as used by the courts refers not to the legal transfer of title, control, or risk of loss but to the physical placing of the articles at the point where the unloading process may, under the facts of the particular case, be regarded as complete. The issue here is not who owned or controlled the concrete but whether Borders was unloading the truck, and thereby using it, while the bucket full of concrete was being moved from the truck to the contractor's forms. If Capitol had rented or borrowed the crane and bucket, and its employees were using the same to unload the truck, the automobile liability policy would clearly protect Capitol and its employees against liability arising out of the accident involved in this case. Under the terms of the policy, the same protection is afforded Borders who was an additional insured using (unloading) the truck with the consent of Capitol.

Employers also relies on the rule that there must be a causal relation or connection between the accident or injury and the ownership, maintenance or use of the vehicle. This does not mean that the accident must be caused by negligent operation of the vehicle or some defect therein. When a vehicle is being unloaded it is being used to the same extent as if it were being driven, and the person doing the unloading is entitled to the same protection as the owner or operator. In this instance the accident resulted from the collapse of the crane which was transporting concrete from the truck to the forms. Since the injuries arose out of the use (unloading) of the vehicle, it is our opinion that Borders was, as a matter of law, entitled to the protection afforded by the policy covering the truck.

In oral argument before this Court, Employers suggested for the first time that the judgment of the trial court must be affirmed because the record does not show the limits of its policy or that the same constitutes primary coverage. No attempt was made at the trial to introduce either of the two insurance policies in evidence. The above-quoted provisions of the policy issued by Employers are shown by its answers to a request for admissions, but the trial court had no way of knowing the policy limits or the stipulations, if any, which determine the respective rights and obligations of the parties. The latter omission is not of controlling importance here, but the court could not award Travelers a judgment in any substantial amount when the evidence fails to show the limits of the policy issued by Employers or that such company was under an obligation to investigate and defend the claims.

■ Travelers was entitled to nominal damages, however, upon establishing that it was the insurer of the owner of the crane, that it had settled with the beneficiaries of the three deceased employees, that the settlement was reasonable, that the policy issued by Employers also covered the loss, and that Employers had refused to pay any amount on the settlement. We recognize the general rule that where the record shows as a matter of law that the plaintiff

is entitled only to nominal damages, the appellate court will not reverse merely to enable him to recover such damages. See Biggs v. Loyd, Tex.Civ.App., 177 S.W.2d 1020 (writ ref. w. m.); Wafer v. Edwards, Tex.Civ.App., 248 S.W.2d 320 (no writ); Freeman v. Schwenker, Tex.Civ.App., 73 S.W.2d 609 (no writ). It has also been held that the right to recover nominal damages and costs is waived where no request therefor is made in the trial or appellate court. Payne v. Holmes, Tex.Civ.App., 151 S.W.2d 359 (writ dis. judg. cor.); Matthews-Carr v. Brown Exp., Tex.Civ.App., 217 S.W.2d 75 (no writ). On the other hand, there are a number of cases in which the appellate court has reversed and rendered to award the plaintiff nominal damages and costs. Wilson v. Hart, Tex.Civ. App., 332 S.W.2d 107 (no writ); Maass v. Sefcik, Tex.Civ.App., 138 S.W.2d 897 (no writ); Flournoy v. Story, Tex.Civ.App., 37 S.W.2d 272 (no writ).

■■ The authorities indicate that there are a number of exceptions to the general rule mentioned above. Although "on the plaintiff's case as presented at the trial a verdict for nominal damages only would have been justified, yet if the court can now see that substantial damages may be proved at another trial they will reverse the judgment and grant a new trial." Sedgwick on Damages, 9th ed. 1913, § 109. See also Callanan v. Keenan, 224 N.Y. 503, 121 N.E. 376; Thomson-Houston Elec. Co. v. Durant Land Imp. Co., 144 N.Y. 34, 39 N.E. 7; Stevens v. Rogers, 16 Utah 105, 51 P. 261; Annotation, 44 A.L.R. 168, 182; 5 Am. Jur.2d Appeal and Error § 790; 5B C.J.S. Appeal and Error § 1914. While this exception can have only a very limited application, we think the present case is governed thereby. Prior to reaching this Court, counsel for both parties devoted their attention entirely to the single legal question in dispute between them. It is evident that the failure to introduce the two policies was due to oversight which resulted from preoccupation with the real issue in the case, that if the hiatus in the

evidence had been called to the attention of the trial court Travelers could have supplied the necessary proof or at least requested a judgment for nominal damages, that such court erred in rendering a take-nothing judgment against Travelers, and that a substantial injustice will be done if that judgment is affirmed because of a deficiency which apparently was not discovered by either party until shortly before the case was argued here. In these circumstances we are of the opinion that the judgments of the courts below should be reversed and the cause remanded to the district court for a new trial. It is so ordered.