

# NUMBER 13-24-00074-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ZACHARY K. MILLS,
ROBIN MILLS,
AND EDGEGROVE HOMES, LLC,                          Appellants,

v.

DEBORAH RUPP
AND EDWARD RUPP,                                   Appellees.

## ON APPEAL FROM THE 200TH DISTRICT COURT
## OF TRAVIS COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Cron, and Fonseca**
**Memorandum Opinion by Justice Silva**

Appellants Zachary K. Mills, Robin Mills, and Edgegrove Homes, LLC (Edgegrove) (collectively the Millses) appeal the trial court's judgment awarding equitable relief, damages, and attorney's fees to appellees Deborah Rupp and Edward Rupp. The Millses argue by three issues that the Rupps' request for equitable relief was moot and that the

awards for damages and attorney's fees were improper. We affirm in part, reverse in part, and render in part.

## I.    BACKGROUND[1]

On November 19, 2021, the Rupps filed their original petition seeking declaratory and injunctive relief. The Rupps alleged that they lived in the Treadwell Subdivision in Austin, Texas, a residential neighborhood subject to the following deed restrictions:

> 1.    All of said property shall be used for residences only. Except for garages and servants quarters, only one one-story single family dwelling unit shall be erected, placed or permitted to remain on any of said lots.
>
> . . . .
>
> 6.    Each residence erected on any of the above property shall be set back at least according to city requirements from the front property line, shall not be nearer than 12 feet to any side street line, and shall not be nearer than 10 feet to any inside property line.

The deed restrictions were binding unless a "majority vote of the owners" revoked or amended them. The Rupps alleged that the Millses purchased a residence next door to them in January 2021. According to the Rupps, Zachary was in the business of residential home development and owned and operated Edgegrove. Because he intended to demolish the house and build a two-story home, Zachary began a "door-to-door campaign seeking to obtain the signatures" of the Treadwell Subdivision's lot owners for a proposed amendment revoking the single-story home restriction but not the lateral setback

---

[1] This case is before the Court on transfer from the Third Court of Appeals pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. §§ 22.220(a) (delineating the jurisdiction of appellate courts), 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer). We are bound by the precedent of the transferring court to the extent that it differs from our own. *See* TEX. R. APP. P. 41.3.

restriction. According to the Rupps, Zachary told the subdivision's lot owners, among other things, that he wanted to build a 3,500-square-foot two-story home to accommodate his family. Zachary obtained the signatures of twenty-three individuals from the subdivision who were in favor of the amendment. Subsequently, he filed the amendment to the deed restrictions, with attached signatures, in the Travis County real property records.

During the summer of 2021, the Millses demolished the house located on the lot they purchased and filed proposed building plans with the City of Austin. The plans reflected that the Millses sought approval to build a two-story, 5,108-square-foot home, which also intruded into the ten-foot lateral setback required by the deed restrictions. According to the Rupps, the proposed home plan would be two or three times the size of other homes in the subdivision. The Rupps retained counsel and on October 5, 2021, requested the Millses to honor the setback requirements and build a "more reasonably-sized structure." The Millses declined, stating the letter was premature because the City had not granted the building permit. On October 26, 2021, the building permit was issued by the City, and the Millses thereafter began construction on their lot.

In their original petition, the Rupps requested the trial court to render declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.001–.011. Specifically, the Rupps sought, among other things, a declaration that the Millses' amendment to the deed restrictions was invalid. The Rupps also sought a temporary injunction prohibiting the Millses from further construction. The Rupps prayed for court costs, attorney's fees, and general relief.

3

On December 8, 2021, the Millses filed their original answer generally denying the Rupps' claims. The Millses also raised a counterclaim requesting a declaratory judgment that the setback restrictions had been "abandoned and its enforcement waived by the persistent and widespread existing violations of the restriction throughout the subdivision." In the alternative, the Millses requested the trial court to render a declaratory judgment that "the Rupps' home violates the [s]etback . . . restrictions" and order "the demolition or movement of the Rupps' structure." The Millses also asserted affirmative defenses of unclean hands, waiver, and equitable estoppel, alleging that the injunctive relief sought by the Rupps was wrongful because they previously violated the setback restrictions and caused economic damages to the Millses. The Millses also sought attorney's fees.

On January 13, 2022, the Rupps filed their first amended petition and answer generally denying the Millses' counterclaim. In this filing, the Rupps additionally requested entry of a permanent injunction. Soon thereafter, the trial court granted a temporary injunction in favor of the Rupps and directed the parties to mediation.

On March 28, 2022, the Millses filed their "Motion to Require Joinder of Indispensable Parties and Motion to Abate." In said motion, the Millses asserted that the Rupps were required to join the other lot owners of the Treadwell Subdivision as indispensable parties because "a declaratory judgment as to the enforcement of the vote on the amendment to the [d]eed [r]estriction affects everyone in the neighborhood." Accordingly, the Millses requested the trial court to abate the case until the other lot owners of the subdivision were joined as defendants.

4

On April 28, 2022, the Rupps filed their second amended petition, the live pleading, which added a breach of contract claim based upon the Millses' alleged violations of the deed restrictions. The Rupps also pleaded for a breach of restrictive covenant by which they asserted "an equity cause of action against . . . [the] Mills[es] to construe and enforce the [d]eed [r]estrictions." With respect to this deed enforcement claim, the Rupps sought "a judgment on this claim that would be binding only upon [the Millses] . . . and request that any final judgment in favor of [the Rupps] contain language stating no non-party lot owner is bound by the judgment." In their prayer for relief, the Rupps sought temporary and permanent injunctions, a declaratory judgment, court costs, reasonable attorney's fees, and general relief.

On May 4, 2022, the Rupps filed their notice of nonsuit as to "their claim for declaratory relief set forth in Section V-C of their Second Amended Original Petition and Answer to Counterclaim." On the same day, the trial court denied the Millses' motion for joinder and abatement. On June 8, 2022, the Millses filed their notice of nonsuit regarding their counterclaim against the Rupps.

On December 20, 2022, the Millses filed their pretrial stipulations. They stipulated, in relevant part, to the following:

1.      The deed restrictions . . . permit[ ]only one-story single family dwellings, garages and servant quarters on any property covered by the [d]eed [r]estrictions and prohibits, among other things, any residence constructed closer than ten feet (10') from any inside property line.

2.      The [Millses' attempted amendment] was not effective to amend the [d]eed [r]estrictions.

3.      The [d]eed [r]estrictions apply to [the] . . . Mills[es]' property. . . .

5

4. [The Millses] commenced construction of a two-story house that would have violated the ten foot (10') inside property lien [sic] set back set forth in the [d]eed [r]estrictions, but ceased such construction when the Court entered the [t]emporary [injunction] in this case.

On January 25, 2023, the Millses filed their "Plea to the Jurisdiction, Motion to Dismiss Case for Lack of Justiciable Controversy and Jurisdiction, and Trial Brief on Attorney's Fees." In said motion, the Millses argued, in relevant part, that "[b]y virtue of the [Rupps] dropping their declaratory judgment claim over the [a]mendment to [the deed restrictions] and the [Millses] dropping their counterclaim and filing the [s]tipulations, the parties removed any justiciable controversy in this case."

A bench trial commenced the following day. During opening statements, the Millses suggested to the trial court that the Rupps were "asking for an advisory opinion to establish their breach case" because the Rupps had nonsuited their declaratory judgment claim. The Millses also informed the trial court that the Rupps had not pleaded for any damages. The Rupps then filed a motion for leave to file an amendment to their live pleading to request "nominal damages of not more than $5[,]000 for their contract and equitable enforcement claims." The Rupps argued that they had previously disclosed their request for $5,000 in nominal damages in their disclosures to the Millses. The Millses objected to the amendment, arguing that they were prejudiced because their "whole strategy today was based on the fact that [the Rupps] w[ere not] seeking damages," and that the Millses "would have done discovery" if the Rupps had sought damages. The trial court did not rule on the motion, and the parties proceeded to trial.

Several exhibits were admitted into evidence, including a copy of the Treadwell

Subdivision deed restrictions, the Millses' amendment, and the Millses' stipulations. Edward testified that he and his wife had lived in the Treadwell Subdivision for thirty-one years. He stated that most of the homes in the subdivision ranged in size from 1,500 to 2,500 square feet, and were constructed in the 1950s. According to Edward, the Millses had demolished the previous home on their lot in October 2021. By November, the Millses had placed wooden foundation framing for a new structure. Edward testified that the construction continued after the Millses received the Rupps' cease and desist letter, which was admitted into evidence. He further testified that there were sixty-six owners of the forty-three lots in the subdivision, but the Millses' amendment to the dead restrictions contained only twenty-two signatures, which Edward stated did not constitute a majority vote of the lot owners in the subdivision.

Edward testified that he obtained the floor plan for the Millses' proposed construction from the City's website, which was also admitted into evidence. He further testified that he told Zachary on the phone that the plans appeared to show encroachment into the ten-foot setbacks and the construction of a two-story structure. Zachary confirmed the plans. Edward then told Zachary about the setback restriction. According to Edward, Zachary responded that "other developers had done it." Edward responded that he was "not onboard with that plan," and Zachary replied, "Okay," and hung up the phone.

Edward stated that Zachary represented to him in February 2021 that he intended to build a 3,500-square-foot home. When asked if he had incurred any damages, Edward replied:

> The view out of the front and side of our house has been impaired, we have this construction fence with the blue tarp that blows in the breeze, we have

7

a six-foot construction debris dump, six foot high on the property, there's an abandoned construction truck that's been there for over a year, there are piles of fill dirt.

The construction fence creates a barrier to being able to see traffic coming from the north down the street. There have been several times where I've had to stop short while trying to back out of my driveway because there was a car or a pedestrian right there and I couldn't see them until the back end of my car was out into the street.

Edward testified that he was requesting $2,200 in damages, based on "$5 a day since the beginning of November of 2021." Edward admitted that the wooden foundation frames on the Millses' lot were removed after the lawsuit was filed.

Zachary testified that he was unaware of the deed restrictions until an architect brought it to his attention. According to Zachary, the architect suggested that Zachary could have the deed restrictions amended to permit him to build a two-story home. Zachary also clarified that he knew about the ten-foot setback restriction at the time he filed the building plans in September 2021. Zachary stated he no longer had any desire to build a two-story house or invade the setback restrictions, and he acknowledged that he did not have the legal right to do so. When asked if he felt free to proceed with the building plans even if the trial court did not enter a permanent injunction, Zachary replied, "No." However, Zachary admitted that he continued to solicit votes to support the amendment following the temporary injunction. When asked if he "would be okay with [the trial court] requiring [his] vote gathering to be done by owner and not by lot," Zachary replied, "Yes." After the parties provided closing arguments, the trial court ordered the parties to file trial briefs regarding the mootness and trial amendment issues.

On February 9, 2023, the Rupps filed their "Post-Trial Brief in Support of Trial

Amendment and In Opposition to [the Millses'] Motion to Dismiss Case."

On April 3, 2023, the trial court signed its order granting the Rupps leave to file their trial amendment. Additionally, the trial court signed orders denying the Millses' plea to the jurisdiction and motion to dismiss and denying the Rupps' request for a permanent injunction.

On May 31, 2023, the trial court resumed the trial to consider the parties' requests for attorney's fees and the Rupps' request for damages. The Millses objected to any evidence of attorney's fees, arguing that the trial court could not award nominal damages and that nominal damages do not support an award of attorneys' fees. The Rupps' counsel admitted to using the phrase "nominal damages" in the proposed trial amendment, but said he had used the phrase "in the colloquial sense of, we're not asking for very much here." The Rupps' counsel also responded that attorney's fees are recoverable in nominal damage cases. The trial court overruled the Millses' objection. Thereafter, counsel for the Rupps and the Millses testified about the fees incurred, and their invoices were admitted into evidence. After hearing arguments by the parties, the trial court informed them it was taking the matter under advisement.

On November 8, 2023, the trial court signed its written judgment in favor of the Rupps regarding (1) their "equitable action to construe and enforce the deed restrictions," (2) their "breach of contract claim based upon breach of the deed restrictions," and (3) their request for attorney's fees. In the portion of the judgment pertaining to the Rupps' equitable enforcement claim, the trial court concluded that the Treadwell Subdivision's deed restrictions "preclude[] [l]ot [v]oting and instead require[] a vote of the majority of

9

owners" and that the Millses' amendment "failed to achieve a majority vote of the [o]wners." The trial court further concluded that the Rupps "were entitled to assert their claim for relief as an equitable cause of action to enforce the [d]eed [r]estrictions" and ordered the Rupps to file a copy of the judgment "in the official property records of Travis County pertaining to the Mills[es' l]ot." In the portion of the judgment pertaining to the Rupps' breach of contract claim, the trial court concluded "the trial evidence established a claim for breach of contract" and awarded the Rupps $2,200 in damages. In addition, the trial court awarded the Rupps $85,697.84 in attorney's fees pursuant to § 5.006 of the Texas Property Code and Chapter 38 of the Texas Civil Practice and Remedies Code. This appeal followed.

## II.     MOOTNESS

In their first issue, the Millses argue that the portion of the judgment pertaining to the Rupps' equitable claim for enforcement of deed restrictions should be vacated and dismissed because the claim is moot.

### A.     Standard of Review and Applicable Law

"The mootness doctrine implicates subject matter jurisdiction." *See In re Smith Cnty.*, 521 S.W.3d 447, 453 (Tex. App.—Tyler 2017, no pet.); *City of Shoreacres v. Tex. Comm'n on Env't Quality*, 166 S.W.3d 825, 830 (Tex. App.—Austin 2005, no pet.). Whether a court has subject matter jurisdiction is a legal question that we review de novo. *See Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 682 (Tex. 2020). Regarding the mootness doctrine, the Texas Supreme Court has stated:

> Just as the Texas Constitution bars our courts from deciding a case when the plaintiff lacks standing, similarly, a court cannot decide a case that has

become moot during the pendency of the litigation. A case becomes moot if, since the time of filing, there has ceased to exist a justiciable controversy between the parties—that is, if the issues presented are no longer "live," or if the parties lack a legally cognizable interest in the outcome. Put simply, a case is moot when the court's action on the merits cannot affect the parties' rights or interests. If a case is or becomes moot, the court must vacate any order or judgment previously issued and dismiss the case for want of jurisdiction.

*Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012) (citations omitted).

Chapter 37 of the Texas Civil Practice and Remedies Code, also known as the Texas Uniform Declaratory Judgments Act (UDJA), gives Texas courts the power to "declare rights, status, and other legal relations whether or not further relief is or could be claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 37.003(a). The UDJA is a remedial statute, the purpose of which "is to settle and afford relief from uncertainty and insecurity with respect to" those matters, and "it is to be liberally construed and administered." *Id.* § 37.002(b); *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021). The UDJA does not create or augment a trial court's subject-matter jurisdiction—it is "merely a procedural device for deciding cases already within a court's jurisdiction." *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (2011) (quoting *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993)). A declaratory judgment action will lie within the trial court's subject-matter jurisdiction when a justiciable controversy exists as to the rights and status of the parties before the court for adjudication, and the requested declaration will actually resolve the controversy. *See Harvel v. Tex. Dept. of Ins.-Div. of Workers' Comp.*, 511 S.W.3d 248, 255 (Tex. App.—Corpus Christi–Edinburg 2015, pet. denied) (citing *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004)); *OAIC Com. Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 745 (Tex. App.—Dallas

11

2007, pet. denied).

**B.    Analysis**

The Millses contend that the "findings and rulings"[2] in the judgment pertaining to the Rupps' equitable claim for enforcement of deed restrictions should be vacated and dismissed "for lack of jurisdiction" because the claim was moot. According to the Millses, the Rupps' declaratory judgment claim "turned on the legal question of whether an amendment to the deed restrictions required a vote from the majority of the lot owners, as opposed to the owners of a majority of the lots." The Millses assert that this legal question became moot when the Rupps nonsuited their claim for declaratory judgment.

Plaintiffs may file a nonsuit at any time before introducing all of their evidence other than rebuttal evidence. TEX. R. CIV. P. 162. No court order is required. *Id.*; *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A nonsuit terminates a case "from 'the moment the motion is filed.'" *Joachim*, 315 S.W.3d at 862 (quoting *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam)). At the same time, a nonsuit does not affect any pending claim by an adverse party for affirmative relief or motion for attorney's fees or sanctions. *Id.* at 863; TEX. R. CIV. P. 162.

Rule 162 does not authorize a plaintiff to dismiss some, but not all, claims against a defendant. *See C/S Sols., Inc. v. Energy Maint. Servs. Grp. LLC*, 274 S.W.3d 299, 305–06 (Tex. App.—Houston [1st Dist.] 2008, no pet.). "Rule 63, however, allows a plaintiff to

---

[2] We note that Rule 299a of the Texas Rules of Civil Procedure explicitly prohibits findings of fact from being recited in the judgment. *See* TEX. R. CIV. P. 299a.

12

file an amended pleading that omits a claim . . . ." *Id.*; *see* TEX. R. CIV. P. 63. Under that rule, "a party may file an amended pleading outside seven days of the trial date freely, without leave of court." *Mensa-Wilmot v. Smith Int'l, Inc.*, 312 S.W.3d 771, 778 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Further, Rule 165 provides that "[a] party who abandons any part of his claim or defense, as contained in the pleadings, may have that fact entered of record, so as to show that the matters therein were not tried." TEX. R. CIV. P. 165. "[T]reatises have drawn a distinction between a pure Rule 162 nonsuit, which voluntarily dismisses the entire case, and a voluntary dismissal that abandons the case as to certain parties and/or claims." *C/S Sols., Inc.*, 274 S.W.3d at 306. "This distinction has no practical effect when a plaintiff files a written 'nonsuit' that abandons the case as to certain claims so long as the written 'nonsuit' does not run afoul of the time restrictions in Rule 63." *Id.*

When the complaining party does not file special exceptions, "we liberally construe the pleadings in the pleader's favor." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018). Here, no special exceptions were filed by either party. *See id.* In addition, the Rupps' "nonsuit" specifically referred to "their claim for declaratory relief set forth in Section V-C of their Second Amended Original Petition and Answer to Counterclaim." "Section V-C" of the live pleading contained the following:

## V.    <u>CLAIMS FOR RELIEF</u>

. . . .

### C.    Declaratory Judgment

26.    Pursuant to Chapter 37 of the Texas Civil Practice [and] Remedies Code, the [Rupps] request the court to render a declaratory judgment

13

containing the following findings:

a.      Eleven of the signatures appended to the amendment, as filed in the real property records of Travis County, failed to contain the signatures of each co-owner or community property owner with respect to the lots purportedly voting in favor of the [d]isputed [a]mendment.

b.      On or about October 26, 2021, the City of Austin approved certain plans and specifications submitted by the defendants for the construction of a residence on the lot owned by Zachary Mills and Robin Mills and located at 6404 Wilbur Drive in the Treadwell Subdivision, Section 2, of Austin, Texas (the "Building Plans").

c.      Such Building Plans contemplate the construction of a two-story residence of approximately 5108 square feet.

d.      The Building Plans contemplate the construction of residence that would violate the 10-foot lateral setback line required in paragraph 6 of the Deed Restrictions.

e.      The Building Plans propose construction that violates the Deed Restrictions governing the Treadwell Subdivision, Section 2, filed of record at Volume 132, p. 219, of the Travis County real property records.

We conclude under our liberal pleading rules, that the Rupps' written "nonsuit" is in substance an amended pleading voluntarily abandoning Section V-C of the live pleading, only, notwithstanding the fact that the word "nonsuit" appears. *See* TEX. R. CIV. P. 71 (misnomer of pleadings); *Bos*, 556 S.W.3d at 306; *C/S Sols., Inc.*, 274 S.W.3d at 307–08. Because this document was filed more than seven days before trial, the Rupps were not required to request leave of the trial court. *See* TEX. R. CIV. P. 63; *Mensa-Wilmot*, 312 S.W.3d at 778.

The Millses further argue that the Rupps' equitable enforcement claim was "nothing more than a rebranding of their request for declaratory relief that was nonsuited" and suggest that there are no cases recognizing "a common law cause of action to

14

equitably construe and enforce a deed restriction separate and apart from" a claim seeking declaratory or injunctive relief. Furthermore, they argue that "there was no cause of action remaining at the time of trial that would have required the jurisdiction required for the trial court to make the findings and order the relief that it did[.]" We disagree.

We first acknowledge that the judgment contains numerous statements, some of which concern the manner of voting required by the deed restrictions and the validity of the Millses' amendment. Specifically, the judgment states, "The Court agrees that the . . . language [of the deed restrictions] precludes [l]ot [v]oting and instead requires a vote of the majority of owners." The judgment also states, "The evidence at trial established that the [a]mendment failed to achieve a majority vote of the [o]wners." We conclude these statements are actually declarations of the parties' rights and obligations under the deed restrictions. *See* TEX. R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity."); *Benavides v. Alexander*, 646 S.W.3d 14, 20 (Tex. App.—San Antonio 2021, pet. denied) ("[A] party may not be granted relief in the absence of pleadings to support that relief.").

Texas courts of appeals have long recognized a claim for the equitable enforcement of deed restrictions, sometimes referred to as restrictive covenants. *See EIS Dev. II, LLC v. Buena Vista Area Ass'n*, 715 S.W.3d 689, 700–01 (Tex. 2025). ("A court may refuse in equity to enforce a deed restriction when 'there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in

15

a substantial degree the benefits sought to be realized through the' restriction.") (citing *Cowling v. Cowling*, 312 S.W.2d 943, 945 (Tex. 1958) ("There are certain rules of law by which a court of equity must be guided in determining whether to enforce a residential-only restriction.")); *see also Park v. Escalera Ranch Owners' Ass'n*, 457 S.W.3d 571, 601 (Tex. App.—Austin 2015, no pet.) ("When determining whether it would be inequitable to enforce a restrictive covenant against a particular property owner, 'we must weigh the equities of the owner in violation of the covenant against the equities favoring other lot owners who acquired their property on the strength of the restriction.'"). Claims for enforcement of deed restrictions can and often involve requests for declaratory and injunctive relief. *See EIS Dev. II, LLC*, 715 S.W.3d at 694; *Park*, 457 S.W.3d at 577.

The Millses' argument is predicated on the premise that the Rupps' "nonsuit" was tantamount to a complete abandonment of their request for declaratory relief. As noted above, the Rupps' effectively abandoned Section V-C of their live pleading, but nothing else. The Rupps' claims for breach of contract and enforcement of deed restrictions remained live after they filed their "nonsuit," as well as their prayer for declaratory relief. *See Bos*, 556 S.W.3d at 306. Therefore, the trial court was authorized to award declaratory relief based on the pleadings. *See* Tex. R. Civ. P. 301; *Benavides*, 646 S.W.3d at 20.

The Millses also suggest that their stipulations eliminated the controversy between the parties. *See Heckman*, 369 S.W.3d at 162. We disagree. The Rupps' breach of contract and deed enforcement claims both concerned the legal issue regarding the validity of the Millses' attempted amendment to the deed restrictions as well as whether

16

the Millses breached the deed restrictions. While the Millses specifically stipulated that their attempted amendment "was not effective to amend the [d]eed [r]estrictions," they did not stipulate as to the reason why the amendment was not effective. In other words, the Millses did not stipulate regarding whether the deed restrictions required a vote from the majority of the lot owners, or owners of a majority of the lots, which was the central issue concerning the Rupps' claims. We also observe that the Millses' stipulations did not address damages as related to the Rupps' claims. The parties both had a legally cognizable interest in the resolution of the issue of damages in relation to the Rupps' claims. *See Heckman*, 369 S.W.3d at 162. Accordingly, we conclude that the Millses' stipulations did not eliminate the controversy between the parties. *See id.* We overrule the Millses' first issue.

### III.    ATTORNEY'S FEES

In their second issue, the Millses argue the trial court erred in awarding the Rupps attorney's fees under § 38.001 of the Texas Civil Practice and Remedies Code. In their third issue, the Millses argue the trial court erred in awarding the Rupps attorney's fees under § 5.006 of the Texas Property Code. We address these issues together.

### A.    Standard of Review and Applicable Law

We review a trial court's decision to award attorney's fees for an abuse of discretion. *Sullivan v. Tex. Ethics Comm'n*, 551 S.W.3d 848, 857 (Tex. App.—Austin 2018, pet. denied). "Absent a contact or statute, trial courts do not have inherent authority to require a losing party to pay the prevailing party's fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). "Chapter 38 of the Civil Practices and

17

Remedies Code allows recovery of attorney's fees in breach of contract cases . . . [.]" *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 666 (Tex. 2009). "A person may recover reasonable attorney's fees . . . in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). "To recover fees under [Chapter 38], a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages." *MBM Fin. Corp.*, 292 S.W.3d at 666. Section 5.006 of the Texas Property Code provides that "[i]n an action based on breach of a restrictive covenant pertaining to real property, the court *shall* allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim." TEX. PROP. CODE ANN. § 5.006(a) (emphasis added).

## B.      Analysis

### 1.      Section 38.001 of the Texas Civil Practice and Remedies Code

In their second issue, the Millses first argue that the Rupps were not awarded damages in the judgment, and therefore, there was no basis to award attorney's fees. *See MBM Fin. Corp.*, 292 S.W.3d at 666. In support of their argument, the Millses direct us to a portion of the judgment where the trial court crossed out a damage award of $2,200 and initialed the alteration. However, elsewhere in the judgment, the trial court expressly awarded the Rupps $2,200 in damages regarding their breach of contract claim, and this second award was not struck through or initialed by the trial court. Accordingly, we assume without deciding the judgment awarded the Rupps $2,200 in damages on their breach of contract claim.

The Millses alternatively argue that the damage award was erroneous because

18

there was legally insufficient evidence to support it. Specifically, they contend that there was no "proximate causational tie between the alleged breach and the damages to which [Edward] testified." The existence and amount of damages resulting from an alleged breach is an essential element of a breach-of-contract claim.[3] *See Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 166 (Tex. App.—Austin 2017, pet. denied). "The goal in measuring damages for a breach-of-contract claim is to provide just compensation for any loss or damage actually sustained as a result of the breach." *Parkway Dental Assocs. v. Ho & Huang Props., LP*, 391 S.W.3d 596, 607 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "The normal measure of damages in a breach-of-contract case is the expectancy or benefit-of-the-bargain measure." *Id*. The purpose of this measure of damages is to restore the injured party to the economic position it would have occupied had the contract been performed. *Id.* at 607–08. "To restore an injured party to the position he would have been in had the contract been performed, it must be determined what additions to the injured party's wealth have been prevented by the breach and what subtractions from his wealth have been caused by it." *Sharifi v. Steen Auto., LLC*, 370 S.W.3d 126, 148 (Tex. App.—Dallas 2012, no pet.) (citing *Lafarge Corp. v. Wolff, Inc.*, 977 S.W.2d 181, 187 (Tex. App.—Austin 1998, pet. denied)).

When asked about damages, Edward testified about the visual obstructions caused by the wooden foundation framing that was placed around the Millses' property

---

[3] A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 (Tex. 2018).

upon commencement of construction. Edward also stated there was a "six-foot construction debris dump," "an abandoned construction truck," and "piles of fill dirt" located on the Millses' lot. In reference to these damages, Edward testified that he was requesting $2,200 based on "$5 a day since the beginning of November of 2021." On cross examination, the following exchange occurred:

> [The Millses' counsel]: Other than the [foundation] forms that were put up, I just want to make sure that I understand this, is the fence, the dumpster, the debris, it doesn't matter, that can all be put up regardless of whether it's a one-story or a two-story house; correct?
>
> [Edward]: Yes.
>
> [The Millses' counsel]: There's no restriction in the deed restrictions about any of those items?
>
> [Edward]: There is no deed restriction.

We conclude that this testimony does not constitute evidence of "any loss or damage actually sustained" by the Rupps as a result of the Millses' breach of the deed restrictions. *Parkway Dental*, 391 S.W.3d at 607. In other words, none of Edward's testimony demonstrates the economic position the Rupps would have occupied had the Millses not breached the deed restrictions. *See id.* at 607–08. Furthermore, there is no evidence as to what additions to the Rupps' wealth have been prevented by the Millses' breach and what subtractions from their wealth have been caused by it. *See Sharifi*, 370 S.W.3d at 148.

The Millses further assert that "nominal damages" cannot support an award of attorney's fees under Chapter 38, and that the damage award here cannot "legally constitute an award of nominal damages." In *MBM Financial Corp.*, the Texas Supreme

20

Court analyzed whether a $1,000 award of "actual damages" for breach of contract was supported by evidence when the appellant requested only nominal damages at trial. 292 S.W.3d at 664–66. The Court held that "nominal damages are supposed to be a 'trifiling sum,' and $1,000 hardly falls in that category." *Id.* at 665 (quoting BLACK'S LAW DICTIONARY 418 (8th ed. 2004) (defining nominal damages)). The Court further held that "nominal damages are not for compensation; they are for cases in which there are no damages, or none that could ever be proved." *Id.* The Court concluded that the $1,000 damage award could not be sustained as either actual or nominal damages, and rendered judgment that the appellee take nothing as damages:

> While we normally remand for a new trial when there is some evidence to support an amount of actual damages, in this case there was no evidence about the amount of damages at all. And "where the record shows as a matter of law that the plaintiff is entitled only to nominal damages, the appellate court will not reverse merely to enable him to recover such damages." [*Travelers Ins. v. Emps. Cas. Co.*, 380 S.W.2d 610, 614–15 (Tex. 1964).] Accordingly, we must render judgment that the [appellee] take nothing as damages on its breach of contract claim.

*Id.* at 666 (footnotes omitted). The Court further concluded that the appellee's attorney fee award could not be affirmed based on Chapter 38. *See id.*

For the same reasons set forth in *MBM Financial Corp.*, we conclude that the $2,200 damage award involved in this case cannot be upheld as nominal damages. *See id.* Moreover, as stated above, there is no evidence supporting actual damages. Therefore, we must reverse the judgment's $2,200 damage award, and render judgment that the Rupps take nothing as damages on its breach of contract claim. Consequently, we hold that the Rupps' attorney fee award cannot be affirmed based on Chapter 38. *See id.*; TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8). We conclude the trial court abused its

21

discretion to the extent it awarded the Rupps attorney's fees based on Chapter 38, and sustain the Millses' second issue.

## 2. Section 5.006 of the Texas Property Code

In their third issue, the Millses argue that the Rupps are not prevailing parties as required for attorney's fees to be awarded under the Texas Property Code. *See* TEX. PROP. CODE ANN. § 5.006. Here, the trial court's judgment found in favor of the Rupps regarding their breach of contract and equitable enforcement of deed restriction claims. The pleadings reflect that those claims were based on the Millses' alleged breach of the restrictive covenants pertaining to their property. *See id.*; *see also Kopplow Dev., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013) (holding that because Texas is notice pleading jurisdiction, petition is sufficient if it gives fair and adequate notice of fact upon which claims are based); *Att'y Gen. of Tex. v. Lavan*, 833 S.W.2d 952, 954 (Tex. 1992) (holding that in the absence of special exceptions, court construes pleadings liberally in favor of pleader). In *Norton v. Deer Creek Prop. Owners Ass'n*, the Austin Court of Appeals recognized that the term "prevailing party" is not defined by the Texas Property Code and applied the Texas Supreme Court's analysis of that term, in a different statute:

> In *Intercontinental* [*Group Partnership v. KB Home Lone Star L.P.*], the [Texas Supreme C]ourt noted that under federal law, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." [295 S.W.3d 650, 654 (Tex. 2009)] (quoting *Farrar v. Hobby*, 506 U.S. 103, 111–12[](1992)). Based on this federal test, the [Texas Supreme C]ourt held that the plaintiff, KB Home, could not be considered a "prevailing party" because it recovered no damages, secured no declaratory or injunction relief, obtained no settlement in its favor, and received none of the relief sought in its petition.

22

*See id.* at 655.

No. 03-09-0422-CV, 2010 WL 2867375, at *8 (Tex. App.—Austin, July 22, 2010, no pet.) (mem. op.).

The Millses argue that the Rupps were not prevailing parties regarding their requests for a permanent injunction. We agree. The record demonstrates that prior to the entry of the judgment, the trial court denied the Rupps' request for a permanent injunction. The Millses also argue that the Rupps were not prevailing parties with respect to their breach of contract claim because "the Rupps did not put on evidence of recoverable damages[, n]or can any award . . . constitute nominal damages." We agree because we have already sustained the Millses' second issue on this point, and the judgment did not award the Rupps any other relief regarding their breach of contract claim. *See Intercont'l Grp. P'ship*, 295 S.W.3d at 655.

The Millses further argue that the Rupps were not prevailing parties with respect to their enforcement of deed restrictions claim or request for declaratory judgment. We disagree. While the judgment did not award the Rupps any damages in relation to the Rupps' enforcement claim, it did issue declaratory relief. Furthermore, as we addressed above, the Rupps' request for declaratory relief remained live after they filed their "nonsuit." Because the declaratory relief issued by the judgment favored the Rupps, we conclude that they were prevailing parties with respect to their enforcement of deed restrictions claim. *See id.* at 654–55. Accordingly, we conclude the trial court did not abuse its discretion in awarding the Rupps attorney's fees based on § 5.006. *See Sullivan*, 551 S.W.3d at 857. We overrule the Millses' third issue.

23

### IV. CONCLUSION

We reverse the judgment's damage award for the Rupps' breach of contract claim, and render judgment that the Rupps take nothing as damages on their breach of contract claim. We also reverse the portion of the judgment awarding attorney's fees on the basis of Chapter 38. The judgment is affirmed in all other respects.

CLARISSA SILVA
Justice

Delivered and filed on the
15th day of January, 2026.